WILLIAM H. WINDER, PLAINTIFF IN ERROR, *v.* ANDREW D. ·CALDWELL.

Where a *scire facias* was issued to enforce a lien upon a house under the lien law of the District of Columbia, there was no necessity to file a declaration.

Where the contract between the owner and the builder, (who was also the carpenter,) stipulated for a forfeiture per diem in case the carpenter should delay the work, the court below ought to have allowed evidence of such delay to be given to the jury by the defendant, under a notice of set-off, and also evidence that the work and materials found and provided upon and for the building, were defective in quality . and character, and far inferior in value to what the contract and specification called for.

A master builder, undertaker, or contractor, who undertakes by contract with the owner to erect a building, or some part or portion thereof, on certain terms, does not come within the letter or spirit of the act of Congress passed March 2, 1833, .(4 Stat. at Large 659,) entitled an Act to secure to mechanics and others, payment for labor done and materials furnished in the erection of buildings in the District of Columbia.

THIS case was brought up, by writ of error, from the. Circuit Court of the United States for the District. of Columbia, holden in and for the county of Washington.

It was an action of *scire facias*; brought by Caldwell against Winder, upon a claim filed under the act of' Congress ·passed

March 2, 1833, entitled "An Act to secure to mechanics and others, payment for labor done and materials furnished in the erection of buildings in the District of Columbia." 4 Stat. at Large, 659.

Caldwell, in March, 1849, filed his claim in the clerk's office, consisting of the gross sum of $10,500, claimed as due under a special agreement, and the further sum of $4,086 for extra work — the items of the extra work being particularly mentioned in the claim.

Upon this claim the writ of *scire facias* issued March 20, 1849. No declaration was filed. The defendant appeared and pleaded *non assumpsit*, upon which issue was joined.

Upon the trial, the jury found a verdict for the plaintiff in the sum of $4,746, with interest from 9th March, 1849.

Upon the trial, the plaintiff took three bills of exceptions, and the defendant, ten. The substance of them all is stated in the opinion of the court.

It was argued by *Mr. Davidge*, for the plaintiff in error, and *Mr. Bradley* and *Mr. Lawrence*, for the defendant in error.

The counsel for the plaintiff in error made the following points.

I. That, under the act of 1833, the mechanics and material-men who do the work and provide the materials for the building, are entitled to the lien, and not he who merely contracts with them to do and provide such work and materials.

1. Because the law *totidem verbis* confines the lien to those "employed in furnishing materials for, or in the erecting or con-structing" the building.

2. Because the only debts secured by the law are those con-tracted for work done and materials furnished for the building.

3. Because the 2d clause of the 1st section of the act plainly shows that a mere contractor is not within its provisions.

4. Because the contractor not being within the letter, is still less within the spirit of the law, the object of which was to allow those whose property, whether work or materials, had been advanced upon the credit of the building, to follow that property after it had become part of the building. In the present case, the work and materials advanced, or a large portion of them, were not the property of the contractor.

5. Because if the contractor be held within the law, the build-ing would be subjected to double liens and double recoveries. And, more than this, a sub-contractor, not advancing either work or materials, might, with equal justice, claim the lien, and the property would then be subjected to triple liens for the same benefit.

6. Because the mechanics and material-men are, by the law, expressly authorized to institute proceedings against the contractor, the basis of which is, that they have found and provided the work and materials for the building.

7. Because the law contemplates but one lien for the same work or materials, and if there be two or more, the satisfaction which the owner is entitled to, under the last clause of the 1st section could not be entered. Act of 1833, (4 Statutes at Large, p. 659); Penn. Lien Laws of 1803, (Pamphlet L. 591); of 1806, (4 Smith's L. 300); and of 1836, (Pamphlet L. 695); Jones *v.* Shawhan, 4 W. & S. 257, 264; Hoatz *v.* Patterson, 5 W. & S. 537, 539; Haley *v.* Prosser, 8 W. & S. 133, 134; Whitman *v.* Walker, 9 W. & S. 183, 187; Bolton *v.* Johns, 5 Barr's Penn. Rep. 145, 150.

But, further, the act of 1833 cannot be regarded as giving a lien to the contractor in this case, unless it, an affirmative statute, without a repealing clause or negative words, be held to repeal a former law passed in *pari materia*, and between which and the act of 1833 there is no necessary repugnancy. The act of Maryland, passed December 19, 1791, provided as follows:

" X. And for the encouragement of master-builders to undertake the building and finishing houses within the said city, by securing to them a just and effectual remedy for their advances and earnings, be it enacted, that for all sums due and owing, on written contracts, for the building any house in the said city, or the brickwork, or carpenters' or joiners' work thereon, the undertaker or workmen employed by the person for whose use the house shall be built, shall have a lien on the house and the ground on which the same is erected, as well as for the materials found by him; provided the said written contract shall have been acknowledged before one of the commissioners, a justice of the peace, or an alderman of the corporation of Georgetown, and recorded in the office of the clerk for recording deeds herein created, within six calendar months from the time of acknowledgment as aforesaid; and if, within two years after the last of the work is done, he proceeds in equity, he shall have remedy as upon a mortgage, or if he proceeds at law within the same time, he may have execution against the house and land, in whose hands soever the same may be; but this remedy shall be considered as additional only, nor shall, as to the land, take place of any legal encumbrance made prior to the commencement of such claim." 2 Kilty's Laws of Md. act 1791, ch. 45, §.10.

This law gives a lien to the contractor or to the workmen employed by the owner, but it requires, 1. That there shall be a contract in writing; 2. That such contract shall be acknow-

ledged; and 3. Recorded within six months after acknowledgment.

In the present case there was a written contract, but it was neither acknowledged nor recorded; and, besides, the remedy adopted is wholly different from that given by the act of 1791.

Is that law repealed by the act of 1833? It is not in any portion; or, if at all, not so far as concerns the right of the contractor.

It is not repealed, in whole or in part, expressly or by direct terms. Is it by necessary implication?

There must be, to repeal by implication, a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed only *pro tanto*, to the extent of the repugnancy. Wood *v.* The United States, 16 Pet. 342, 362; Daviess et al. *v.* Fairbairn et al. 3 How. 636, 646; Beals *v.* Hale, 4 How. 37, 53; Chesapeake & O. C. Co. *v.* Baltimore & O. R. R. Co. 4 Gill & J. 1, 152, 153; Dwarris on St. 673; 674, 675.

A later statute, which is general, does not abrogate a former, which is particular. 6 Rep. b. 19; Dwarris on St. 674.

Statutes in *pari materia,* are to be taken together and compared in the construction of them. The United States *v.* Freeman, 3 How. 556; Dwarris on St. 699.

Statutes are to be construed with reference to the existing law. Four things are to be considered; what was the law before the act; the mischief not provided against; the remedy provided; and the reason of that remedy. Heydon's case, 3 Co. 7.

The mischief which required the passage of the act of 1833, was twofold: 1. The law gave no lien to mechanics contracting with the undertaker or contractor. 2. It gave no lien whatever to the material-man, unless he was at the same time undertaker, or a workman contracting directly with the owner.

The whole object of the law of 1833, was to supply the omissions of the act of 1791. It was designed to be auxiliary merely, and not to repeal the provisions of the existing law.

Certainly no reason can be assigned why the salutary provision of the act of 1791, requiring a contractor to enter into a written contract, and have the same acknowledged and recorded, was intended to be annulled.

The act of 1701 is not obsolete, but has been recognized as in full force. Homans *v.* Coombe, 3 Cranch, C. C. Rep. 366 — decided in 1828.

II. The court below erred in refusing to instruct the jury that the plaintiff was not entitled to recover for the work and materials done and provided under the special agreement.

1. Because the act of 1833 is inapplicable to cases where work

37 *

and materials are furnished under a special agreement. Jones v. Shawhan, 4 W. & S. 257, 262; Hoatz v. Patterson, 5 Id. 537, 538; Haley v. Prosser, 8 Id. 133, 134; Witman v. Walker, 9 Id. 183, 187; Barton v. Johns, 5 Barr's Penn. R. 145, 150; Act of 1791, ch. 45, § 10; United States v. Barney, 2 Hall's Law J 128; Ex parte Lewis, 2 Gallis. 483; Hostler's case, Yelv. 66; Bac. Abr. Trover, E.; 2 Rol. Abr. 92, Justification, pl. 2; Chapman v. Allen, Cro. Car. 271; Bul. N. P. 45; Brennan v. Currint, Sayre, 224; S. C. cited 3 Selw. N. P. 1163; Stone v. Lingwood, 1 Str. 651; Collins v. Ongley, cited Selw. N. P. ubi sup.; Stevenson v. Blakelock, 1 Maule & Selw. 535; and see, also, Boyce v. Anderson, 2 Pet. 155.

2. Because the special agreement in this case was inconsistent with the retention of a lien. Peyroux et al. v. Howard, 7 Pet. 324, 344; Chase v. Westermore, 5 Maule & Selw. 180; Scarfe v. Morgan, 4 Mee. & W. 270; Stoddard Woolen Man. v. Huntley, 8 N. H. 441; Hutchins et al. v. Olcutt, 4 Verm. 549; Bailey v. Adams, 14 Wend. 201; Welch v. Mandeville, 5 Wheat. 277.

III. The court erred in refusing to submit to the jury the question whether the work and materials, or what part thereof, were supplied upon the credit of the building. Hills v. Elliott, 16 S. & R. 56; Hinchman v. Graham, 2 S. & R. 170.

IV. A declaration should have been filed. Foster on Scire Facias, 72 Law. Lib. p. 350.

V. The judgment rendered was general and *in personam*. The proceeding was *in rem*, and the last clause of the act of 1833, expressly prohibits the rendition of a judgment in the *scire facias*, against any other property than the building against which the lien existed.

VI. The court erred in refusing to instruct the jury that the plaintiff was not entitled to recover for the portion of work and materials performed, and furnished under the special agreement, more than three months before the claim was filed.

VII. The claim, so far as it related to the special agreement, was not filed in conformity with the requirements of the law, and the court erred in refusing to instruct the jury to that effect. See the claim, R. 9; McDonald v. Lindall, 3 Rawle, 492.

VIII. The court erred in excluding from the jury, evidence of defects in the work and materials furnished, under the special agreement. Withers v. Greon, 9 Howard, 213; Van Buren v. Digges, 11 How. 461. Notice of set-off had been given. R. 5.

IX. The court erred in refusing evidence of delay, the demurrage money mentioned in the agreement, being liquidated damages, and not a penalty. Fletcher v. Dyche, 2 T. R. 32; Huband v. Grattan, 1 Alc. & Napier, 389; Crisdee v. Bolton, 3 C. & P.

240; Leighton v. Wales, 3 M. & W. 545; 2 Poth. Obl. by Evans, 81, &c; Noble v. Bates, 7 Cow. 307; 2 Greenleaf on Ev. §§ 257, 258, 259, and cases cited; Van Buren v. Digges, 11 How. 461; Tayloe v. Sandiford, 7 Wheat. 17.

The points on behalf of the defendant in error, were —

*First.* That this act is not repugnant to the act of 1791, but is remedial, cumulative, and auxiliary. That it was designed to give a lien to every person who, whether under a parol contract, oral or written, or a contract under seal, should thereafter furnish materials for or do work upon any dwelling or other building in the city of Washington during its erection, for the owner or for the contractor.

That if the building was constructed by contract, no person who did work or furnished materials to such contractor, could have the lien, unless within thirty days after being so employed, he should give notice in writing to the owner, that he was so employed to work or furnish materials, and that he claimed the benefit of that act.

These points are presented in the 3d, 6th, 7th, 8th, 9th, and 10th exceptions.

1. The first sentence of the act of 1833, is in the most general and comprehensive terms. 7 B: & C. 643.

2. The second sentence expressly contemplates the case of a contract, and provides a remedy for those employed by the contractor.

There is no such provision in any one of the laws of Pennsylvania referred to by plaintiff, and under which the decisions of the courts of that State were made.

3. The act of 1791 expressly recognizes and provides for two sets of liens, the one by the contractor, the other by the workmen. So does the act of 1833.

4. The act of 1791 contemplated a statutory mortgage; provided for contracts of a certain description, viz. those in writing acknowledged before a justice, and recorded in the clerk's office within six months, and gave a remedy in equity.

This act is not repugnant to that. It extends the remedy and provides a new one, (not for those who have made their contracts and recorded them under the law of 1791,) but to all persons who have done work or furnished materials for the building, without pursuing the remedy given by that law. It provides a different remedy. It gives an absolute lien in all cases for two years, to be enforced upon a claim filed by *scire facias* or personal action; or if no claim is filed, then by personal action.

The act of 1791 provides a lien to commence from the date

of the contract, if recorded within six months. The act of 1833 gives a lien from the commencement of the work.

There is no repugnancy between them. The two provisions may well stand together, the latter as cumulative to the former. 3 How. 645–6.

They are both affirmative statutes, and such parts of the prior statute as may be incorporated into the subsequent one as consistent with it, must be considered in force. Id. 644–5.

They are *in pari materia;* they must be taken together as if they were one law. Id. 564.

A thing which is within the intention of the makers of the statute, is as much within the statute as if it were within the letter. Id. 565.

Here the intention cannot admit of dispute. It was to protect all who furnished skill, time, labor, or materials, to the erection of the building, without regard to the manner of their employment. They might make their contract under the act of 1791, and obtain a remedy in equity under that act; or they might proceed under the law of 1833, and seek their remedy at law only. Both laws require a recording as notice. The law of 1833 has received this construction from its passage, and hundreds of mortgages now existing, rest upon it.

Unless it repeals the act of 1791 by necessary implication, it may be merely affirmative, or cumulative, or auxiliary. 16 Pet. 362–3.

The more natural, if not necessary inference is, that the legislature intended the new law to be auxiliary to and in aid of the purposes of the old law, even when some of the cases provided for may be equally within the reach of each. Id. 363.

In construing an act, (and equally so in acts *in pari materia,* 3 How. 564, 2 T. R. 504,) if there are expressions not so large in one part as those used in another, but upon a view of the whole act they can collect from the more large and extensive expression of the legislature, their intention, it is the duty of the Judges to give effect to the larger expressions. Per Lord Tenterden, 7 B. & C. 643.

A second law on the same subject does not repeal a former one without a repealing clause, or negative words, unless so clearly repugnant as to imply a negative. But if they be not so contrary or so repugnant that the last act expresses or implies a negative of the first, then they may continue to stand together. And if such be the case here, a mortgage of city property, recorded in conformity with either law, would be valid. Many cases of this kind, very analogous, are cited in Foster's case, 11 Coke, 63, 64; 4 How. 53.

We contend that both acts are in force, and the parties may

proceed under either. But if the act of 1833 repeals the act of 1791, we contend further that its provisions clearly embrace written contracts for construction.

*Second.* If the contractor or person who had done work or furnished materials for the owner, files his claim in the clerk's office, as provided by the act of 1833, within three months after the last work is done by him, under the same written contract, or under an implied contract, during the progress of the work, that claim will relate back to the commencement of the building and cover the work and materials mentioned in it and used in the erection of the building. 4th and 5th exceptions.

1. The language of the act is explicit. "Every . . . . . building hereafter constructed and erected, &c., shall be subject to the payment of the debts contracted for, or by reason of any work or materials found and provided by any person or persons, &c., employed in furnishing the materials for, or in the erecting and constructing such house or other building, before any other lien which originated *subsequent to the commencement* of such other house or building, &c. : Provided, That no such debt, &c., shall remain a lien on such house or other building, longer than two years from the commencement of the building thereof, unless, &c., a claim be filed within three months after performing the work or furnishing the materials."

It could not have been designed by the legislature to deprive a lumber-merchant of his lien, if there was an understanding between himself and the owner that he should furnish the lumber for the building from time to time, as it should be required, and it should occur, in the course of the erection of the building, that more than three months should elapse between filing one order and the giving of a new one.

2. If the work is done by contract, and there is an express or tacit understanding between the parties that alterations may be required by the owner and executed by the contractor during the progress of the work, it would be in direct violation of the spirit of the law, and the obvious intent of the legislature to deprive the contractor of his lien, unless he from time to time, and every three months recorded his claim.

3. The language of the act is, within three months after *performing the work* or *furnishing* the materials. This means, by the force of the terms, after performing the last work or furnishing the last materials used in the progress of the building; not that he shall record his claims *toties quoties* three months shall elapse. This would be requiring the party to accumulate costs, the thing the legislature designed to avoid, and to do a vain thing, which the law never requires.

4. Much more will this construction apply to a contract, as in

this case, for work and materials for a building which contemplated eighteen months in its construction.

As to the pleadings.

1. No declaration is required on the appearance of the defendant to a scire facias under this act. In Blake v. Dodemead et ux. (2 Str. 775,) it is said there is no such thing as a declaration on a scire facias, the plea is to the writ, and narratio and breve in this case are the same.

Vaughn v. Floyd, 1 Sid. 406. The scire facias disclosed the facts on which it was founded, and required an answer from the defendant; it was said to be in the nature of a declaration.

Bank of Scotland v. Fenwick, 1 Exch. 796, (per Rolfe.) The declaration, in fact, sets out the writ, and is in the same form as the writ.

Nunn v. Claxton, 3 Exch. 715. Although called a declaration, it is "merely a mode of entering the writ on the record."

See, also, Herd v. Brustowe, Cro. Eliz. 177; Tidd's Prac. 8th ed. 1140.

2. The nature of the relief intended, the object of the legislature to give a mortgage, and the writ being provided as notice of the action, the court may well, as the Circuit Court has heretofore, consider it as setting forth the facts on which it is founded, a narrative in the nature of a declaration, make it part of the record, and require the defendant to plead to it. The statute itself, in the second section, would seem to contemplate the same thing.

Second, as to the form of the judgment.

The writ is not to show cause why execution should not issue against the property mentioned in it, but to show cause why the court ought not to render judgment for the sum demanded upon the record aforesaid.

This is the conclusion of the declaration.

The judgment is responsive. It must be the same after the pleading "as in personal actions for the recovery of debts."

The judgment, then, is right. But the record being in the same court, the statute regulates the form and extent of the execution which may issue on that judgment.

Mr. Justice GRIER delivered the opinion of the court.

Caldwell, who was plaintiff below, entered into a contract with Winder, "to furnish all the materials and do all the carpenter work required to a certain house to be erected in the city of Washington," for the sum of ten thousand dollars. After the house was finished, the contractor filed a lien against the building, claiming this sum, together with sundry charges for extra work. A scire facias was issued to enforce this claim, and

a trial had, in the course of which, numerous bills of exception were sealed by the court at the defendant's instance, which form the subjects for our consideration in this case.

1. The want of a declaration, though not the subject of exception below, has been urged here as an error. But we think this objection is without foundation.

A *scire facias* is a judicial writ used to enforce the execution of some matter of record on which it is usually founded; but though a judicial writ, or writ of execution, it is so far an original that the defendant may plead to it. As it discloses the facts on which it is founded, and requires an answer from the defendant, it is in the nature of a declaration, and the plea is properly to the writ. In the present case the bill of particulars of the plaintiff's claim is filed of record under the statute which gives this remedy, and it is recited in the writ and thereby made part of it, so that any further pleading on his part, to set forth the nature of his demand, would be wholly superfluous.

2. In the written contract between the parties, given in evidence on the trial, it is stipulated that "the work is to be promptly executed, so that no delay shall be occasioned to the builder by having to wait for the carpenter's work;" and also, "that in any and every case in which the carpenter shall occasion delay to the building the sum of twenty-five dollars per day shall be deducted for each and every day so delayed, from the amount to be paid by this contract."

The defendant, under a notice of set-off, offered to prove "that in consequence of the plaintiff's not being ready to put up his work according to said contract, delay was occasioned by him in the construction of the building of not less than three weeks;" and also, "that the work and materials found and provided upon and for the said building, were defective in quality and character, and far inferior in value to what said contract and specification called for."

The refusal of the court to permit such evidence to go to the jury, is the subject of the first two bills of exception.

The statute which authorizes this proceeding, gives the defendant liberty "to plead and make such defence as in personal actions for the recovery of debts." Had the plaintiff below brought his action of assumpsit on the contract, the right to make this defence cannot now be doubted. For, although it is true, as a general rule, that unliquidated damages cannot be the subject of set-off, yet it is well settled that a total or partial failure of consideration, acts of nonfeasance or misfeasance, immediately connected with the cause of action, or any equitable defence arising out of the same transaction, may be given in evidence in mitigation of damages, or recouped; not strictly

by way of defalcation or set-off, but for the purpose of defeating the plaintiff's action in whole or in part, and to avoid circuity of action. Without noticing the numerous cases on this subject, it is sufficient to say that the cases of Withers v. Green, (9 How. 214,) and Van Buren v. Digges, (11 How. 461,) decided in this court, are conclusive of the question. The court below, therefore, erred in the rejection of the testimony offered.

3. The remaining bills of exception, involve, in fact, but one prominent and important question, and the decision of it will dispose of this case.

The right to file a "mechanic's lien," as it is usually denominated, is claimed by the plaintiff, under the act of Congress of March 2d, 1833, entitled, "An act to secure to mechanics and others, payment for labor done and materials furnished, in the erection of buildings in the District of Columbia." The first section of this act, defines the persons who shall be entitled to this peculiar security and remedy, as follows:

"All and every dwelling-house, or other building, hereafter constructed and erected within the city of Washington, in the town of Alexandria, or in Georgetown, in the District of Columbia, shall be subject to the payment of the debts contracted for, or by reason of any work done, or materials found and provided by any brickmaker, bricklayer, stonecutter, mason, lime-merchant, carpenter, painter and glazier, ironmonger, blacksmith, plasterer and lumber-merchant, or any other person or persons employed in furnishing materials for, or in erecting and constructing such house or other building, before any other lien which originated subsequent to the commencement of such house, or other building. But if such dwelling-house or other building, or any portion thereof, shall have been constructed under contract, or contracts, entered into by the owner thereof, or his or her agent, with any person or persons, no person who may have done work for such contractor or contractors, or furnished materials to him, or on his order or authority, shall have or possess any lien on said house or other building, for work done, or materials so furnished, unless the person or persons employed by such contractor to do work on, or furnish materials for, such building, shall, within thirty days after being so employed, give notice in writing to the owner or owners of such building, or to his or to their agent, that he or they are so employed to work or to furnish materials, and that they claim the benefit of the lien granted by this act."

Does a master-builder, undertaker, or contractor, who undertakes, by contract with the owner, to erect a building, or some part or portion thereof, on certain terms, come within the letter or spirit of this act, or within any of the classes enumerated, as

entitled to this special remedy? Such persons have an opportunity, and are capable of obtaining their own securities. They do not labor as mechanics, but superintend work done by others. They are not tradesmen in lumber, or other materials for building, but employ others to furnish materials. If such contractor should by accident be a carpenter, or an owner or vendor of lumber, yet he deals not with the owner in this capacity, but as an undertaker, who has covenanted for his own securities.

The title to this act shows its policy and intention. It is to secure, to "mechanics and others, payment for labor done and materials found;" and the persons enumerated in the first section are, plainly, those mechanics and tradesmen whose personal labor or property have been incorporated into the building, and not the agents, supervisors, undertakers, or contractors, who employed them. The act contemplates two conditions, under which such labor and materials may have been furnished: First, on the order of the owner, who may act without the intervention of any middleman, and thus become indebted directly to his mechanics and tradesmen. Or, secondly, when they have been furnished on the order of a contractor or undertaker. In such cases, the mechanic, or material-man, if he intends to look to the credit of the building, and not to that of the contractor with whom he deals, must give notice to the owner of the building, within thirty days, of his intention to claim this security. The contractor, though mentioned in the act, is not enumerated among those entitled to its benefit. The aim and policy of this act is also obvious. Experience has shown that mechanics and tradesmen, who furnish labor and materials for the construction of buildings, are often defrauded by insolvent owners and dishonest contractors. Many build houses on speculation, and after the labor of the mechanic and the materials are incorporated into them, the owner becomes insolvent, and sells the buildings, or encumbers them with liens; and thus, one portion of his creditors are paid at the expense of the labor and property of others. Or, the solvent owner, who builds by the agency of a contractor or middleman, pays his price and receives his building, without troubling himself to inquire what has been the fate of those whose labor or means have constructed it. These evils required a remedy, and such a one as is given by this act. Its object is, not to secure contractors, who can take care of themselves, but those who may suffer loss by confiding in them. It is not the merit of the contractor, that gave rise to the system, but the protection of those who might be wronged by him, if the owner were not compelled thus to take care of their interests before he pays away the price stipu-

lated. But the contractor is neither within the letter nor the spirit of the act.

A question has been made in the argument, whether the act of Maryland, of 19th of December, 1791, formerly in force in this district, is supplied or repealed, by the act of Congress now under consideration. But as the proceedings in this case are not within or under the act of Maryland, the question is not before us for decision. The plaintiff claims his right to support this proceeding, under the act of Congress alone, and if that fails him, his only resource is to his action on his contract. That he has mistaken his remedy, the court entertain no doubt.

If precedent were needed to justify this construction of the act of Congress, it may be found in the reports of the Supreme Court of Pennsylvania, where similar legislation has always received the same construction. See Jones *v.* Shawhan, 4 Watts & Serg. 257; Hoatz *v.* Patterson, 5 W. & S. 537, &c.

4. It is unnecessary to notice particularly the exception to the form of the judgment. It is certainly not in the form required by the act; and although the act may be construed to prescribe the effect rather than the form of the judgment, there is no reason why the form should differ from the effect; or that, in words, it should give the plaintiff any thing more than the law gives him, viz. execution of the property described in the *scire facias.*

The judgment of the Circuit Court is, therefore, reversed, and *venire de novo* awarded.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause, be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo.*