CARTER ET AL. *v.* MARTIN ET AL.
[No. 3063.   Filed May 24, 1899.]

BANKS AND BANKING.—*Deposits.*—*Payment.*—Where a debtor makes
  a deposit with a creditor bank, with an agreement that it shall be
  subject to the depositor's order for a specific purpose, it cannot
  in violation of such order, be applied by the bank in payment of the
  depositor's debt.   *p. 451.*

MECHANIC'S LIEN.—*Payment.*—*Banks and Banking.*—A contractor
  purchased from appellee, a banker, materials used in the construc-
  tion of appellants' building, no time being specified when he should
  pay for the same, except that he should make a payment out of the
  first money received on the contract.   The contractor afterwards
  deposited with the banker a sum of money, more than sufficient to
  pay for said material.   The banker knew the money deposited had
  been received from appellants to apply on the contract price.   The
  deposit was made subject to the contractor's order.   Such sums
  were paid out on the contractor's orders, that the balance was in-
  sufficient to satisfy the banker's claim.   *Held,* that the deposit was
  not a payment, and the banker was entitled to enforce a material
  man's lien for the unpaid balance.   *pp. 446-450.*

SAME.—*Agreement to Secure Against Mechanic's Liens.*—The fact
  that a contractor agreed to furnish security against mechanic's
  liens, and gave bond for the performance of his contract, will not
  preclude a material man from enforcing his lien, where he was not
  a party to the contract or bond.   *pp. 451, 452.*

From the Boone Circuit. Court. *Affirmed.*

*S. M. Ralston, Michael Keefe, Enoch G. Hogate* and *James L. Clark,* for appellants.

*Otis E. Gulley, R. C. Pennington* and *A. J. Shelby,* for appellees.

HENLEY, J.—Appellees commenced this action in the Hendricks Circuit Court of Hendricks county, Indiana, to foreclose a mechanic's lien against certain property of appellants. The venue was changed to the Boone Circuit Court. The complaint was in one paragraph. Appellants answered in five paragraphs; the first being a general denial, and the second, third, fourth, and fifth paragraphs of answer being pleas of payment stated in various forms. The cause was tried by the court, who, at the request of appellants, made a special finding of facts, and stated his conclusions of law thereon. The facts so stated are substantially as follows: In the month of March, 1896, one W. O. McCormick, who was a contractor and builder, made and entered into a contract with the appellants, who were doing business under the name and style of the Magnetic Springs Co., to erect for them a certain building, which was to be finished on or before the 1st day of March, 1896. For the construction of said building appellants agreed to pay the said McCormick the sum of $950. This amount was to be paid as follows: $575 was to be paid as soon as the lumber for said building had arrived at the railroad station at Cartersburg, Indiana; $375 of said amount was to be paid on the 30th day of April, 1896, or on the completion of said building if completed prior to April 30, 1896. A copy of the contract was filed with the complaint and made a part thereof. For the faithful performance of said contract, each party bound himself to the other in the sum of $1,000, and it was further stipulated in said contract that security against mechanics' and other liens was to be furnished by the said McCormick before the sureties or bondsmen would be released by appellants. In the

month of March, 1896, appellees were engaged in the general merchandise business under the firm name of Martin Bros., in Cartersburg, Ind., and in connection with said general merchandise business,—that is to say, with said business, —the appellees kept and had at the same time a private bank, in which they received deposits of money, checks, drafts, and such other commercial paper as is commonly received and held by banks in the general transaction of a banking business, and upon receipt of such money, checks, orders, etc., to be by them held on deposit for their customers, appellees would give to such depositors a certificate of such deposits and would sometimes give them also a pass-book, and they also kept an account of the amount of money received from the depositors, and the amount paid out to them upon their order. Appellees also paid out for their depositors such sums of money as they had been ordered so to pay by their said depositors, by check or otherwise, as is generally done by and through banks. After the said McCormick had entered into the contract with the appellants for the erection of said building, and for the purpose of securing the material that was necessary to be used in its construction, he went to see the appellees, and informed them of his contract with appellants, telling them generally of its terms, and of the amount of money which he was to receive for the erection of said building. Thereupon appellees agreed to furnish the said McCormick with the necessary lumber, hardware, paints, etc., to be used in the construction of said building. Appellees, in pursuance of their said contract with said McCormick, furnished the said lumber, and had the same aboard the cars on the side-track at Cartersburg, Ind., by the latter part of the month of March, 1896. When said lumber had arrived, said McCormick notified appellants of its arrival, and called upon the appellants for the payment of the said sum of $575, according to the terms of his said contract with said appellants. On the 1st day of April, 1896, appellant Quinn paid to the said McCormick on said contract the

sum of $575 in the following manner, to wit: a check for
$300, dated March 30, 1896, drawn by B. F. Worth in favor
of the Magnetic Springs Co., which was indorsed by the said
Quinn to the said McCormick; also one check for $112.41,
dated April 1, 1896, drawn by appellant McClellan on
Crabb & Company's bank at Danville, Ind., in favor of ap-
pellant Quinn, and by him indorsed to said McCormick; also
one check for $103.59, drawn by said McClellan on the First
National Bank of Danville, Ind., in favor of said Quinn, and
by him indorsed to said McCormick; also one check for $15,
dated April 1, 1896, drawn by appellant Barker, and by him
indorsed to said McCormick; and the balance of said sum
required to make the amount of $575 was paid by said Quinn
to the said McCormick in money. Upon the receipt of said
sum of $575, the said McCormick delivered said money and
checks to appellees, at the same time indorsing said checks to
them, and took from them the following receipt: "$575.
Cartersburg, Indiana, April 6, 1896. Received of W. O.
McCormick $575 on deposit, subject to his order. Martin
Bros., by G. G. Martin." It was agreed between appellees
and said McCormick at the time of the deposit of said sum
that McCormick was to draw orders on said Martin Bros.
against said sum so deposited by him for the payment of
material other than that purchased by him of appellees, and
also for the payment of laborers employed by said Mc-
Cormick engaged in the work upon said building. In pur-
suance of said agreement, said McCormick drew on the said
appellees, and said appellees paid out on orders of said Mc-
Cormick the sum of $280. That appellees knew at the time
said $575 was deposited with them that said McCormick had
received the same from appellants in discharge of the first
payment on his contract with appellants to erect said build-
ing; and that said McCormick had no other means or money
than that on deposit with appellees with which to pay his
hands working on said building, and with which to pay for
the material used in the construction of the building. At the

Carter *v.* Martin.

time said McCormick deposited with appellees the said sum of $575, he was indebted to them for material furnished him by them, and which was to be used by him in the construction of appellants' building, in the sum of $450. There was no time agreed upon between appellees and McCormick when they furnished said McCormick with said material when the same should be paid, except that it was agreed that said McCormick should make a payment to appellees on said material out of the first money which he received from appellants on his building contract, said McCormick having informed appellees that he would be able to pay out of the first money received upon his contract the sum of about $300, and that said McCormick did pay appellees out of his said first payment the sum of $295; and that all the material furnished by the appellees to said McCormick was used in the construction of appellants' building, which building appellants occupied two or three days before it was completed. That the sum of $280 paid out by appellees on said McCormick's orders, was all paid out for labor on said building, or in the purchase of material for said building, being other material than the material furnished by appellees for which this action was commenced. Upon the receipt of the checks by appellees from McCormick, which went to make up a part of said McCormick's first payment of $575, appellees indorsed the same, sent them by mail to the First National Bank of Danville, Ind., where they were received, and the amount of said checks placed to the credit of appellees by said First National Bank. Upon a settlement being had between appellees and said McCormick, it was found that, after charging McCormick with the amount of money which they had paid out to him, and for him on his orders, for labor and material used in the construction of said building as aforesaid, aggregating in amount the sum of $280, appellees had a balance in their hands of $295, which sum it was agreed by and between the said McCormick and said appellees was to be

applied upon the indebtedness owing to them for material so furnished as aforesaid to said McCormick; leaving a balance owing to said appellees of $379.73, which is unpaid at this time. It is further found by the court that the last item of material furnished by appellees to the said McCormick was within the statutory time, and that they properly filed and had recorded a notice of their intention to hold a material man's lien for material so furnished by them; that the value of the fee for appellees' attorneys for bringing this action is $40. The court stated as its conclusions of law on the facts found that the appellees are entitled to have and hold a lien on the premises described in the complaint in the sum of $370, and that the appellees are entitled to have a decree of foreclosure, and to have said premises sold on said decree for the satisfaction of said lien. Appellants excepted to each of the conclusions of law as stated by the court.

The only error assigned is that the court erred in its conclusions of law stated upon the facts found. Stated in the language of counsel for appellants: "The contention of the appellants is that, under all the circumstances as shown by the special findings, the knowledge the appellees had of the contract between appellants and McCormick, its terms as to payment, where the checks and the money came from that constituted the first payment, that when the appellees received the $575 of appellants' money it was more than enough to pay all that was owing the appellees, that under all these circumstances the reception of the money was payment to appellees, and the conclusions of law ought to be for appellants." We cannot adopt the views of appellants' counsel. The facts clearly show that appellees received the $575 from McCormick under an agreement the terms of which were partly written, as represented by the receipt executed by appellees to McCormick, and partly verbal, as is shown by the special finding of facts. The receipt shows that the money was received on deposit by appellees subject to the order of McCormick, and that it was agreed, at the

Carter *v.* Martin.

time the money was so deposited, that appellees would pay said money upon the order of said McCormick for labor and material used in the construction of appellants' building. It was not contended that this agreement was directly or indirectly violated. When appellees received said money from McCormick under said agreement to pay it out upon his order in satisfaction of certain claims, they lost all control of it, so far as disposing of it in any other manner than as was agreed at the time the money was received. "It is one of the settled rules governing the application of payments that if the matter of the application of the payment is canvassed between the debtor and creditor, and the creditor refuses to apply the payment as directed by the debtor, but accepts the payment so made, he must apply it as directed by the debtor." *Wipperman* v. *Hardy*, 17 Ind. App. 142. Nor does this view of the law, as applicable to the facts in the cause, in any way conflict with the well settled rules of law as applied to banks. Appellees were doing a banking business. They accepted the $575 from McCormick as a deposit, but they accepted it under a special agreement, as is shown by the finding of facts. Where one indebted to a bank makes a *general* deposit, the bank may appropriate such deposit to the payment of the said indebtedness. Such right may be waived by the bank, but if the rights of third parties intervene, the neglect of the bank to make such appropriation of the principal debtor's funds will in most cases discharge the indorsers and sureties. Morse on Banks and Banking (2nd ed.) p. 47. Newmark on Bank Deposits, section 117.

It is also contended by counsel for appellants that appellees cannot enforce their lien because one of the provisions of the contract between McCormick and appellants was as follows: "Security against mechanics' or other liens is to be furnished by W. O. McCormick prior to release of surety or bondsmen by Magnetic Springs Company." But appellees were not parties to the contract, neither were they sureties or

bondsmen for McCormick. They were material men, and we cannot see why they should be made to suffer by a failure of McCormick to comply with his contract with appellants. For a breach of this contract resulting in damages to appellants an action upon his bond would afford a remedy. We do not think the cases cited by appellants' counsel state the law as applicable to the facts shown by the record in this cause. The judgment is affirmed.