## The Baldwin Locomotive Works *v.* Edward Hines Lumber Company et al.

[No. 22,922.  Filed December 18, 1919.  Rehearing denied March 12, 1920.]

1. Mechanics' Liens.—*Waiver by Contract.*—A direct and positive covenant in the principal contract against liens precludes all who work under, or furnish material to, the principal contractor, since the authority of persons so working and of materialmen depends upon the contract, and they are bound to know what is in it affecting the statutory right of lien. pp. 191, 192.
2. Mechanics' Liens.—*Waiver of Right.—Public Policy.*—Positive stipulations in the principal contract against mechanics' liens do not conflict with any rule of public policy. p. 193.
3. Mechanics' Liens.—*Waiver.—Pleading.*—Waiver of the right to a mechanics' lien, being in the nature of new matter, should be specially pleaded. p. 193.
4. Mechanics' Liens.—*Contract.—Inconsistent Provisions as to Waiver.*—A provision in the principal contract permitting the owner to retain payment from the principal contractor until liens are discharged, is not sufficient to overcome a direct and positive covenant against liens. p. 194.

From Lake Superior Court; *A. D. Bartholomew*, Special Judge.

Action by the Edward Hines Lumber Company and others against the Baldwin Locomotive Works. From a judgment for the plaintiffs, the defendant appeals. *Reversed.*

*Bomberger, Peters & Morthland, Harvey J. Curtis* and *Oliver Starr,* for appellant.

*John E. Crawford, George E. Hershman, W. B. Van Horn, Frank B. Pattee, Leander J. Monks, L. V. Cravens, Knapp & Campbell, John R. Cochran,* and *Rabb, Mahoney & Fansler,* for appellees.

TOWNSEND, C. J.—Appellees, materialmen, brought suit against appellant, owner, to enforce mechanics' liens. The issues were formed by complaint of the first appellee named and cross-complaints of the other three, which complaint and cross-complaints appellant answered by general denial and a second paragraph of special answer, which set up the contract between appellant and appellant's contractor. The court sustained a demurrer to each paragraph of special answer, which ruling appellant assigns as error. The trial resulted in a judgment in favor of each of the appellees and a foreclosure of liens.

The contract, made a part of the special answer, contained the following stipulation:

"No contractor, subcontractor, materialman, or other person furnishing labor or materials for the work herein provided for, or for any alterations or additions thereto, shall have any right to file any mechanic's lien, or claim of any sort or kind against the premises, or any part thereof."

NOVEMBER TERM, 1919. 191

Baldwin, etc., Works *v.* Edward Hines Lumber Co.—189 Ind. 189.

This presents the question of whether a direct and positive covenant in the principal contract precludes appellees from having a lien under the statute. While the lien arises independent of contract, it does not arise in spite of contract; nor does it arise where there is no contractual relation, mediate or immediate, between the person claiming the lien and the owner. The owner must consent to have the work done, or the material furnished, before the lienor may invoke the statute. We can conceive of no case in which this consent does not arise from contract, express or implied, mediate or immediate. Therefore we make no distinction between direct and derivative right conferred by the statute. (The statute in this state is one of the so-called direct.) If there must be authority from the owner and he who seeks to enforce a lien must show that he had the consent of the owner directly or indirectly to furnish the material or perform the labor on the owner's premises before he may have a lien, then the question is, Can the owner so curtail the authority of his contractor as to limit the right of all of those who touch the premises by virtue of the authority given the contractor, that their rights under the statute may be cut off.

The better rule seems to be that where there is a direct and positive covenant in the principal contract against liens, it precludes all who work under, 1. or furnish material to, the principal contractor. *Schroeder* v. *Galland* (1890), 134 Pa. St. 277, 19 Atl. 632, 7 L. R. A. 711, 19 Am. St. 691; *Geo. B. Swift Co.* v. *Dolle* (1906), 39 Ind. App. 653, 80 N. E. 678; *Carson, etc., Co.* v. *Cleveland, etc., R. Co.* (1914), 57 Ind. App. 357, 105 N. E. 503. The cases which seem to be at variance to this and are so cited sometimes,

when examined, disclose that there was not a direct and positive covenant against liens, but some stipulation by which the contractor agreed to indemnify the owner against liens—*Whittier* v. *Wilbur* (1874), 48 Cal. 175; *Jarvis* v. *State Bank* (1896), 22 Colo. 309, 45 Pac. 505, 55 Am. St. 129—or to permit the owner to retain payment until liens were discharged. *Evans* v. *Grogan* (1893), 153 Pa. St. 121, 25 Atl. 804; *Taylor* v. *Murphy* (1892), 148 Pa. St. 337, 23 Atl. 1134, 33 Am. St. 825.

All decisions concede that a subcontractor or materialman could not furnish material or help to erect a structure different from that provided for in the principal contract, and still be permitted to enforce a lien. In other words, the decided cases are, so far as the nature of the structure is concerned, that those who come in under the principal contract are bound to know what is in it. If they are bound to look to the principal contract for this authority, then it is difficult to see why they should not be required to discover all stipulations in the contract which limit the authority of the principal contractor and those who do anything under him.

In the instant case, even though the court sustained a demurrer to the several paragraphs of special answer, this contract was admitted in evidence as a part of appellees' proof. This was done on the very principle that we have previously stated: that it was incumbent upon these materialmen to show a contractual relation between the owner and the contractor with whom these materialmen dealt. That is, it was necessary for them to establish that the owner consented either directly or indirectly to their furnishing the material for the premises in

NOVEMBER TERM, 1919.     193

Baldwin, etc., Works *v.* Edward Hines Lumber Co.—189 Ind. 189.

question. It is rather anomalous to say that these materialmen had to look to some contractual relation for authority, and that they are bound by certain stipulations in the contract which affect them, as to the kind and quality of the structure, and are not bound by others which affect their statutory right of lien.

That no public policy is involved is shown by the fact that courts of last resort in four states have declared statutes void which attempted to nulli-fy stipulations against liens. *Palmer* v. *Tingle* (1896), 55 Ohio St. 423, 45 N. E. 313; *Waters* v. *Wolf, Exr.* (1894), 162 Pa. St. 153, 29 Atl. 646, 42 Am. St. 815; *Kelly* v. *Johnson* (1911), 251 Ill. 135, 95 N. E. 1068, 36 L. R. A. (N. S.) 573, and note; *Spry Lumber Co.* v. *Sault, etc., Trust Co.* (1889), 77 Mich. 199, 43 N. W. 778, 6 L. R. A. 204, 18 Am. St. 396.

We hold that the stipulation in the contract in the instant case precludes appellees from having a lien under the statute, and we hold that the court erred in sustaining a demurrer to these paragraphs of special answer.

It is insisted by the appellees that appellant was not harmed by this ruling because the contract was admissible under the general denial. We hold that waiver in a case like this is similar to estoppel, and should be specially pleaded. It is in the nature of new matter and falls within the rule laid down by Mr. Pomeroy. cited in Vol. 1 of Works' Practice, p. 377, as follows: "Whatever fact, if proved, would not thus tend to contradict some allegation of the plaintiff's first pleading, but would tend to establish some circumstance, transaction or conclu-

194    SUPREME COURT OF INDIANA,

Baldwin, etc., Works *v.* Edward Hines Lumber Co.—189 Ind. 189.

sion of fact not inconsistent with the truth of all of those allegations, is new matter.''

It is also insisted by appellees that another provision in the contract, by which the owner was permitted to retain payment from his principal contractor until liens were discharged, abrogates the provision heretofore set out. It is true that this provision, standing alone, might amount to the recognition of the right of a lien, but it is not sufficient to overthrow a direct and positive covenant against liens. *Morris* v. *Ross* (1898), 184 Pa. St. 241, 38 Atl. 1084; *Commonwealth, etc., Trust Co.* v. *Ellis* (1899), 192 Pa. St. 321, 43 Atl. 1034, 73 Am. St. 816.

(We are fully cognizant of *North* v. *Clark* [1893], 85 Me. 357, 27 Atl. 252, and the cases in other states which follow it.)

The judgment of the trial court is reversed, with instructions to overrule the demurrers to each of the paragraphs of special answer.

Lairy, J., dissents to the overruling of the petition for rehearing.

### DISSENTING OPINION.

LAIRY, J.—The principal opinion holds that a stipulation in a building contract between the owner of real estate and a contractor, whereby the latter agrees that no lien shall be filed or enforced against the property by himself as contractor, or by any subcontractor, laborer or materialman, is binding as against a person or corporation who furnishes material for the building, which is used in its construction, although the person furnishing such material had no notice of the stipulations contained therein. To this proposition I cannot give my assent.

The right of a person furnishing material used in a lienable structure to have a lien on the structure and the real estate on which it is located is given by statute. §8295 Burns 1914, Acts 1911 p. 62. The statute confers this right directly on the person who furnishes the material. The right thus conferred does not depend on the existence of a similar right in the contractor or the subcontractor to whom the material may be directly furnished. The owner may have paid the contractor the full amount of the contract price in advance, or the contractor may have agreed to build the structure and furnish labor and material in payment of a pre-existing debt owing by him to the owner. In either event the contractor would not be entitled to file or enforce a lien against the property for the reason that nothing could become due him under such an arrangement, and yet it has been held that a materialman may assert a lien against the property of the owner, notwithstanding payment to the contractor of the contract price in full. *Colter* v. *Frese* (1873), 45 Ind. 96; *Andis* v. *Davis* (1878), 63 Ind. 17, 20; *Johnson* v. *Spencer* (1912), 49 Ind. App. 166, 96 N. E. 1041.

The right of a laborer, materialman, or subcontractor does not depend on any contract between the lienor and the owner. The owner is not personally liable for the price of material used in a structure erected on his premises, which material is furnished to an independent contractor who is under contract with the owner to erect the structure and furnish the material. Such independent contractor is not the agent of the owner and cannot bind the owner by contracts for material or labor. There is no privity of contract between the owner and the person who

furnishes material under those circumstances, and yet
such materialman is given a right to a lien against
the property by virtue of our statute. The right thus
given does not depend on any contractual relation
existing, either directly or indirectly, between the
owner and the person entitled to the lien. *Johnson* v.
*Spencer, supra; Shilling* v. *Templeton* (1879), 66 Ind.
585. The right to the lien is created by statute, irre-
spective of any contractual relation. Where labor and
material are furnished for a lienable structure erected
under the authority of the owner, the statute author-
izes a lien, not on the theory that the owner has con-
sented to such lien, but on the theory that he has con-
sented that the repair or improvement be made to his
property. The lien is authorized on the theory that
the property is preserved or enhanced in value by
the labor performed or the material furnished and
that the person who has thus contributed to the pres-
ervation or enhancement of the property of another
is entitled to compensation. *Barrett* v. *Millikan*
(1900), 156 Ind. 510, 60 N. E. 310, 83 Am. St. 220. It
is, of course, true that a person cannot obtain a right
to a lien by furnishing material for a building erected
by a mere interloper on lands of another without the
authority or consent of the owner, but when the owner
ceases to be his own builder and authorizes a con-
tractor to build for him, he puts it in the power of
such contractor to enhance the value of his property
by labor and material furnished by others. To avoid
a loss to persons furnishing such labor and material
on account of the failure of the contractor to pay, the
legislature provided the security of a lien on the
theory that such labor and material were furnished

. NOVEMBER TERM, 1919.    197

Baldwin, etc., Works *v.* Edward Hines Lumber Co.—189 Ind. 189.

on the credit of the building, the presumption being that the property was increased in value to the extent of the labor and material so furnished. *Colter* v. *Frese, supra; White* v. *Miller* (1851), 18 Pa. St. 52; *Sodini* v. *Winter* (1869), 32 Md. 130. It thus appears that the right to the lien is imposed by the statute, under the conditions therein stipulated, irrespective of the consent of the owner and without regard to his objection or protest.

By the great weight of authority, it is held that statutes imposing liens on property on the theory stated do not deprive the owners of property without due process of law, or deprive him of the liberty to make contracts. *Smith* v. *Newbaur* (1895), 144 Ind. 95, 42 N. E. 40, 1094, 33 L. R. A. 685; *Barrett* v. *Millikan, supra; Jones* v. *Great Southern, etc., Hotel Co.* (1898), 86 Fed. 370, 30 C. C. A. 108. The decision last cited was rendered by Lurton, J., Taft, J., and Clark, Dist. J. The opinion written by Lurton, J., cites a great number of authorities from numerous states upholding the validity of such statutes, and, in concluding the discussion, the court said: "'If we had doubt as to whether such statute was 'due process of law,' or violated the fundamental right of owning and enjoying property, or unreasonably restrained liberty of contract, we should be disposed to yield to the current and weight of authority in upholding such acts as valid and constitutional. * * * Such statutes have met with the approval of the legislative bodies of nearly every state in the Union, as well as of Congress, as indicated by the act of 1833, construed in *Winder* v. *Caldwell*, 14 How. 434. They have survived assault whenever the question has arisen, save in

Ohio and Michigan, and to a limited degree in Pennsylvania, and in a still larger number of instances have been enforced without question as to their validity.''

The case from which the quotation is made sustained the validity of the statute of Ohio, which was held invalid by the Supreme Court of that state in the case of *Palmer* v. *Tingle* (1896), 55 Ohio St. 423, 45 N. E. 313. This case is cited in support of the prevailing opinion, as are also the cases of *Spry Lumber Co.* v. *Sault, etc., Trust Co.* (1889), 77 Mich. 199, 43 N. W. 778, 6 L. R. A. 204, 18 Am. St. 396; *Waters* v. *Wolf, Exr.* (1894), 162 Pa. St. 153, 29 Atl. 646, 42 Am. St. 815, and *Kelly* v. *Johnson* (1911), 251 Ill. 135, 95 N. E. 1068, 36 L. R. A. (N. S.) 573. The decision in all of these cases is based on the proposition that statutes purporting to give an independent lien directly to subcontractors, laborers, and materialmen, irrespective of any right of the contractor to a lien and regardless of a stipulation in the original building contract against all such liens, are invalid for the reason that their enforcement would deprive the owner of his property without due process of law, and would also deprive such owner of liberty to contract freely with reference to his own property. From what has been said, it is apparent that the weight of authority is opposed to the proposition stated, and that this court has followed the current of authority. Our statute, which confers a right to an independent lien directly on subcontractors, laborers and materialmen, has been held valid by this court as against the same objections which resulted in the overthrow of the statutes in the cases last cited. *Smith* v. *Newbaur, supra; Barrett* v. *Millikan, supra.*

The prevailing opinion in this case concedes that the lien given to laborers and materialmen by our statute arises by virtue of law and independently of contract; but it is asserted that it cannot arise in spite of contract. It may be conceded that the statute does not involve any such question of public policy as would preclude any person from relinquishing by contract any right of lien conferred thereby, either present or prospective.

It is clear, therefore, that a party to a building contract may agree that he will file no lien against the property, and such agreement will be binding on him. He may also agree that no contractor, subcontractor, materialman, or other person furnishing labor or material for the contemplated work shall be entitled to a lien against the property, and such agreement will bind him personally, and will preclude him from asserting any lien. It may be that such an agreement would constitute a personal covenant by the contractor to hold the owner free from loss arising from liens filed by persons belonging to the classes enumerated in the agreement, and that he would be personally liable on his covenant for any loss so sustained; but how can it be reasonably held that such an agreement would bind a person who was not a party to the contract, or preclude him from asserting a right given him by statute which he had not agreed to relinquish? In making such an agreement, the contractor binds nobody but himself; the rights of persons who subsequently perform labor or furnish material for the work to be performed under the contract in ignorance of such agreement cannot be affected thereby. *Hume* v. *Seattle Dock Co.* (1914),

68 Ore. 477, 137 Pac. 752, 50 L. R. A. (N. S.) 153; *Central Trust Co.* v. *Richmond, etc., R. Co.* (1895), 68 Fed. 90, 15 C. C. A. 273, 41 L. R. A. 458; *Jarvis* v. *State Bank* (1896), 22 Colo. 309, 45 Pac. 505, 55 Am. St. 129; *Carter* v. *Martin* (1899), 22 Ind. App. 445, 53 N. E. 1066; *Johnson* v. *Spencer, supra; Cost* v. *Newport Builders', etc., Co.* (1908), 85 Ark. 407, 108 S. W. 509, 14 Ann. Cas. 142.

The propositions stated and the cases cited have application to statutes which confer on those who furnish labor and material to a contractor a direct lien independent of any right to a lien by the contractor. Where the statute is of such a character as to give creditors of the contractor a derivative lien whereby they are substituted to the rights of the contractor as they exist at the time notice of the claim is given, a different rule applies. Under such statutes, payment to the contractor in advance is a defense against any attempt by laborers or materialmen to assert liens, as such creditors of the contractor could stand in no better position than he did; and, for the same reason, such creditors could not enforce a lien, under such a statute, where the contractor had by agreement relinquished his right to a lien. *Jones* v. *Great Southern, etc., Hotel Co., supra; Frost* v. *Falgetter* (1897), 52 Neb. 692, 73 N. W. 12; *McCrary Bros.* v. *Bristol Bank, etc., Co.* (1896), 97 Tenn. 469, 37 S. W. 543; *Dore* v. *Sellers* (1865), 27 Cal. 588.

The question here involved was not directly presented in either of the cases decided by the Appellate Court of this state, and cited in support of the prevailing opnion. *Geo. B. Swift Co.* v. *Dolle* (1906), 39 Ind. App. 653, 80 N. E. 678; and *Carson, etc., Co.* v.

*Cleveland, etc., R. Co.* (1914), 57 Ind. App. 357, 105 N. E. 503. The writer of this opinion admits his responsibility for the dictum contained in the case last cited, but a more extended investigation has convinced him that the rule there stated is unsound. In the opinion of the writer, the better reason, as well as the great current and weight of authority, is opposed to the proposition stated in the prevailing opinion. He was therefore compelled to vote in favor of sustaining the motion of appellee for a rehearing and to dissent from the ruling of the court in denying such motion.

I have the utmost regard for the judgment and ability of my associates on the bench, but the position involved is so important, and my convictions on the subject are so strong, as to impel me to express my reasons for such dissent.