**Judd M. LOFCHIE, Appellant,**

v.

**WASHINGTON SQUARE LIMITED PARTNERSHIP, Appellee.**

No. 87–867.

District of Columbia Court of Appeals.

Argued March 2, 1990.
Decided Oct. 2, 1990.

Morris R. Battino, Washington, D.C., for appellant.

Nancy N. Fey, Rockville, Md., for appellee.

Before TERRY, SCHWELB and FARRELL, Associate Judges.

TERRY, Associate Judge:

Appellant Lofchie, the tenant, appeals from a decision of the Landlord and Tenant Branch of the Superior Court granting appellee Washington Square Limited Partnership, the landlord, a money judgment for rent and interest. Lofchie principally argues that the money judgment is invalid because he was not personally served with the complaint. He also contends that Washington Square, a partnership, lacked the capacity to sue him in the partnership's name. We reject both arguments and affirm the judgment.

I

On May 1, 1985, Judd Lofchie and Robert Dumas leased Suite 1210 in an office building at 1050 Connecticut Avenue, N.W., from Washington Square Limited Partnership.[1] The lease, which was for two years, set a monthly "basic rent" of $12,912.50 for the offices. Sections 1(a)(9) and 1(a)(12) of the lease also made the tenants responsible for payment of their share (0.73 percent) of the building's operating expenses.

When Lofchie failed to pay the basic rent for April 1986, Washington Square filed suit for possession and rent due, which included both the basic rent and the charge for operating expenses. Instead of personally serving Lofchie with a copy of the summons and complaint, however, a process server merely left copies of those documents with an unidentified receptionist at Lofchie's office, and then mailed copies to Lofchie at 1050 Connecticut Avenue, N.W., Suite 1210. Dumas, who filed a bankruptcy petition, was never served at all.[2]

Lofchie, an attorney, appeared in court alone on the initial return date and requested a continuance so that he could obtain an attorney to file an answer on his behalf. When the case next came before the court, however, Lofchie was still without counsel. Finally, three weeks after the return date, he filed an answer *pro se* in which he asserted three "affirmative defenses": (1) that he had not been provided with a "tax bill" as required by the lease, (2) that he had not been given sufficient information to determine the basis for the assessment of his portion of the operating expenses, and (3) that he had been fraudulently induced into signing the lease when Washington Square (presumably through its agents, whom he named elsewhere in the answer) represented to him that the operating expenses would be "nominal"; acting on this information, he said, he signed the lease agreement. Some time after filing his answer, Lofchie retained counsel.

It is apparently undisputed that Lofchie vacated the leased offices on or about June 7, 1986.

The trial began two and a half weeks later, on June 24. At trial Lofchie's counsel reiterated a claim raised in an earlier motion that the court lacked jurisdiction over the case because Lofchie had vacated the premises. A few moments later, in the

1. The building is known as Washington Square.

2. Under section 28(a) of the lease, Lofchie and Dumas each agreed to be jointly and severally liable for all obligations arising under the lease; consequently, if Lofchie was validly served, the failure to serve Dumas as well does not defeat Washington Square's claim against Lofchie.

course of arguing that Washington Square should not receive the $12,912.50 that Lofchie had previously deposited in the court registry under a protective order, counsel for Lofchie asserted several setoff defenses, all of which the court rejected because they were not appropriate in an action involving a commercial lease.

After two days of testimony,[3] the trial had to be continued because some of those involved, including the judge, would not all be available again on the same date for several weeks. Shortly before the trial resumed in September, counsel for Lofchie filed a motion for summary judgment, asserting for the first time that Washington Square's claim for a money judgment could not be considered because Lofchie had not been personally served with the complaint, as required by Super.Ct. L & T R. 3.

The trial eventually ended, and the court took the case under advisement. In due course the court issued a memorandum opinion, finding that Washington Square had failed to serve Lofchie personally. The court also ruled, without explanation, that Lofchie "did not assert a counterclaim or defense of recoupment or setoff in his answer" that would enable the court, under Rule 3, to award a money judgment notwithstanding the defective service of process. It held nevertheless that Washington Square was entitled to a money judgment, as well as possession of the leased premises, because Lofchie had waived the defective service of process by failing to raise it until more than two months after the trial began.

## II

■ At oral argument in this court, Lofchie claimed for the first time that Washington Square, a partnership, lacked the capacity to sue him in the partnership name. Super.Ct.Civ.R. 9(a)—which is made applicable to landlord and tenant proceedings by Super.Ct. L & T R. 2—expressly states that a party seeking to challenge the capacity of his adversary to sue "shall do so by specific negative averment." Following the federal courts' interpretation of the corresponding federal rule, Fed.R.Civ.P. 9(a), we hold that Lofchie waived his right under Civil Rule 9(a) to challenge the capacity of Washington Square to sue by failing to raise the issue before trial. *Ralston Oil & Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 692 (5th Cir.1983); *Lang v. Texas & Pacific Ry.*, 624 F.2d 1275, 1277 (5th Cir.1980); *Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1174 (1st Cir.1980).

## III

■ The primary issue presented on this appeal is whether the requirements of Super.Ct. L & T R. 3 were met in this case. In pertinent part, the rule states:

> An original or amended complaint may include ... a claim for a money judgment based on rent in arrears, provided that no money judgment shall be rendered against the defendant unless he has been personally served or unless he asserts a counterclaim or a defense of recoupment or setoff.

Although Lofchie was not personally served, we are satisfied that Rule 3 does not bar the entry of a money judgment because Lofchie asserted a defense of recoupment in his answer. We therefore need not, and do not, decide the more difficult question of whether the personal service requirement of Rule 3 can be waived (the ground on which the trial court based its ruling in Washington Square's favor).[4]

■ Lofchie's allegation in his answer that Washington Square fraudulently induced him to enter into the lease was an assertion of a recoupment defense. "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is ground-

---

**3.** Most of the evidence dealt with the amount of the judgment Washington Square was entitled to recover. The court later said in its opinion:

> [I]t was the presentation of evidence on this issue which consumed the vast majority of the court's time in this case. In fact, had this

evidence not been presented, the case would have been resolved in a matter of minutes.

**4.** Similarly, we need not and do not decide whether the oral assertion of setoffs by Lofchie's counsel at trial satisfied the dictates of Rule 3.

ed." *Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935); *see Baylor v. Bortolussi*, 194 A.2d 653, 656 (D.C.1963) (counterclaim "in the nature of recoupment" disallowed because it "did not arise out of the same contract sued upon" by the plaintiff). In this case the fraud allegation arose out of the same contract upon which Washington Square's suit was based: the lease itself. The general rule in American courts is that a claim of fraud "growing out of and relating to the transaction in question" constitutes a defense of recoupment, which "opens generally the entire contract or transaction so far as is necessary to determine the plaintiff's right to damages...." 20 AM.JUR.2D *Counterclaim, Recoupment, and Setoff* § 17, at 240 (1965); *accord,* 80 C.J.S. *Set–Off and Counterclaim* § 34, at 44 (1953) ("Defendant may recoup for fraud or deceit which induced the making of a contract"). Because Washington Square could not lawfully have induced Lofchie by fraud to enter into the contract, *see, e.g., Hollywood Credit Clothing Co. v. Gibson*, 188 A.2d 348, 349 (D.C.1963), his allegation of fraud in the inducement, if proved,[5] could have nullified the contract entirely or reduced the amount of the judgment eventually entered against him. *See Smith v. O'Connor*, 66 App.D.C. 367, 369–370, 88 F.2d 749, 751–752 (1936), quoting *Winder v. Caldwell*, 55 U.S. (14 How.) 434, 443–444, 14 L.Ed. 487 (1852). Lofchie's fraud claim asked the court, in effect, to look beyond his non-payment of rent, to examine his entire transaction with Washington Square, and to enter a judgment that would do justice in view of the transaction as a whole. *See Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946).

We hold that, because Lofchie asserted a defense of recoupment in his answer, the requirements of Rule 3 were met. The judgment of the trial court is accordingly

*Affirmed.*[6]

SCHWELB, Associate Judge, concurring:

I join Judge Terry's opinion for the court, but I think it appropriate to add a few observations.

On June 7, 1986, Lofchie vacated the premises, thus taking the question of the landlord's right to possession out of the case. The only issue that remained was the amount, if any, of Lofchie's liability for rent arrearages. The case went to trial on June 24, and there were two days of testimony at that time. Lofchie, a lawyer, did not breathe a word about insufficient service. The landlord expended time, money and counsel fees litigating the landlord's right to back rent, and the court devoted substantial and precious judicial resources to that issue. Three months later, Lofchie filed his motion for summary judgment, raising for the first time the lack of personal service.

Surely it would be unconscionable to allow the tenant to hold back a defense of this kind, to wait until the landlord and the court had gone to trial on the remaining issues in the case, and then to spring his trap and render all of the prior proceedings superfluous. The doctrine of equitable estoppel prevents a party from asserting his rights where it would be inequitable and unconscionable to permit him to do so. *Savonis v. Burke*, 241 Md. 316, 317–21, 216 A.2d 521, 522–23 (1966); *see also Hardison v. Shirlington Trust Co.*, 148 A.2d 88, 89–90 (D.C.1959). The independent doctrine of judicial estoppel precludes a litigant from playing fast and loose with a court of justice by changing his position according to the vicissitudes of self-interest, for such conduct is an affront to judicial dignity. *See Scarano v. Central Railroad Co. of*

---

5. The fact that Lofchie did not prove fraudulent inducement is not relevant here. Rule 3 requires only that a defense of recoupment be asserted as a condition precedent for the entry of a money judgment against a tenant, not that it be successful.

6. In affirming the judgment on a ground not relied upon by the trial court, we are following long-established precedent. *See Garrett v. Washington Air Compressor Co.*, 466 A.2d 462, 464 n. 5 (D.C.1983) (citing cases).

*New Jersey,* 203 F.2d 510, 513 (3d Cir.1953); *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177–79 (D.S.C.1975); 1B J. MOORE, MOORE'S FEDERAL PRACTICE § 0.405[8], at 239–47 (1988).

In light of our holding that Lofchie effectively asserted a defense of recoupment in his answer,[1] I agree with my colleagues that it is not necessary for us to determine with finality whether he would otherwise be estopped to assert lack of personal service as a defense.[2] I write separately, however, to dispel any notion that defenses can be withheld without risk until after the adversary and the court have expended resources in reliance on the litigant's initial position. Equitable considerations are not alien to our jurisprudence, nor is common sense a luxury which courts are or should be too ascetic to invoke.

---

1. In my opinion, Lofchie's oral assertion of recoupment defenses was also sufficient to give the court authority to award rent in arrears. *See* Super.Ct. L & T R. 5(a).

2. In the present case, one might reasonably question the reasonableness of the landlord's reliance on the non-assertion of the defense of lack of personal service in light of the provisions of Super.Ct. L & T R. 3.