### KIRK v. UNITED STATES et al.

(Circuit Court, N. D. New York. July 11, 1903.)

1. FEDERAL COURTS—JURISDICTION—EXECUTION—COLLECTION—INJUNCTION.

Where proceedings in the federal District Court of the Southern District of Georgia, on which an execution was founded, were void, the Circuit Court of the United States for the Northern District of New York had jurisdiction to restrain the marshal of the latter district from enforcing and collecting such execution from property owned by the resident debtor located therein.

2. SAME—BAIL—FORFEITURE—COURTS—JURISDICTION.

Where a recognizance was given by a nonresident defendant to appear and answer an indictment against him in the District Court of the Southern District of Georgia, on which a resident of New York was

¶ 2. See Bail, vol. 5, Cent. Dig. § 336.

surety, the court in which the indictment was pending had jurisdiction to forfeit the recognizance on the defendant's failure to appear.

**8. SAME—SCIRE FACIAS—EXECUTION—INJUNCTION—PENDENTE LITE.**

G., a resident of New York, was indicted in the federal District Court for the Southern District of Georgia for conspiracy against the United States. On being arrested in New York, proceedings were had by which bail was given before a United States commissioner in New York for G.'s appearance, on which complainant, also a resident of New York, was surety. Thereafter, on G.'s alleged failure to appear and answer the indictment, scire facias was issued on the bail bond by the Georgia court, which was never personally served on complainant, and after two returns of nihil the bail was forfeited, and an execution issued to the United States marshal in New York, who levied the same on complainant's property. *Held* that, since scire facias on a forfeited recognizance is to be regarded as an original process in a special proceeding, the validity of the proceedings for forfeiture was sufficiently doubtful to justify the court in issuing an injunction pendente lite restraining the marshal from enforcing the execution.

This is a motion for a rule or order enjoining the defendants, and each of them, during the pendency of this suit, from taking any proceedings whatever under and pursuant to the execution referred to in the bill of complaint, and which was issued upon a judgment and proceedings in the District Court of the United States for the Eastern Division of the Southern District of Georgia, and from in any manner attempting to collect the amount of the execution or any part thereof.

Kellogg & Rose, for complainant.

George B. Curtiss, U. S. Atty., for defendants.

RAY, District Judge. Prior to the 20th day of January, 1902, an indictment was found against one John F. Gaynor and others in the United States District Court for the Eastern Division of the Southern District of Georgia, and which indictment charged the said Gaynor and others with having unlawfully, knowingly, and feloniously confederated, etc., to defraud the government of the United States, and with having defrauded the said government of a large amount of money, contrary to law, pursuant to such conspiracy. The said John F. Gaynor is, and at all times, both before and at the time of finding such indictment and since, has been, a resident and an inhabitant of the county of Onondaga in the state of New York.

Said indictment having been found in said District Court, and the defendant Gaynor being a resident of the state of New York, in said state proceedings were taken to apprehend the said Gaynor and remove him to said district, where said indictment was found, for trial. He was arrested and charged with said crime, on oath, before John A. Shields, one of the commissioners of the United States, of the Southern District of New York, and an examination having been had before said commissioner, and the commissioner having decided that it appeared to him that the offense with which the said Gaynor stood charged had been committed, and that there was probable cause to believe the said Gaynor guilty thereof, the said commissioner held Gaynor to await the warrant of removal by the United States district judge; and the United States district judge for the Southern District of New York having heard application for said warrant of removal.

on the 28th day of May, 1901, issued such a warrant to the marshal for the Southern District of New York, by virtue of which it was directed that the said John F. Gaynor be removed to the Southern District of Georgia for trial in the District Court of the United States for the Eastern Division of the Southern District of said state of Georgia. The marshal of the said Southern District of New York took the said John F. Gaynor into his custody under said warrant, and said Gaynor applied for a writ of habeas corpus, but same was denied, and on appeal the order denying the writ was affirmed by the Supreme Court of the United States on the 6th day of January, 1902. The mandate of the Supreme Court was then filed in the Circuit Court, and the judgment of the Supreme Court on the 17th day of January, 1902, was made the judgment of the Circuit Court, and the said Gaynor, pursuant to the order of the said Circuit Court of the Second Circuit, surrendered himself to the marshal of said Southern District of the state of New York under said warrant for removal to Georgia for trial. Thereupon the said John F. Gaynor tendered bail for his appearance in Georgia and in said district for trial under said indictment.

Gaynor entered into a recognizance on the 20th day of January, 1902, before said John A. Shields as said commissioner, with one William B. Kirk, of Syracuse, N. Y., the complainant in this action, as surety, whereby they severally acknowledged themselves to owe to the United States of America the sum of $40,000, separately to be levied and made of their respective goods and chattels, lands, and tenements to the use of the United States, if default should be made in the condition following, to wit:

"Now, therefore, the condition of this recognizance is such, that if the said John F. Gaynor shall personally appear at the Term of the District Court of the United States for the Eastern Division of the Southern District of Georgia, to be holden on the second Tuesday in February 1902, and from day to day and from term to term should the case be continued, and then and there to answer to such matters and things as have or shall be objected against him, and to stand to, abide and perform the orders of this Court, and not depart the said Court without leave, then this recognizance to be void, otherwise to remain in full force and virtue."

This was signed by John F. Gaynor, the defendant in said indictment, and by William B. Kirk aforesaid as surety, and same was signed and acknowledged in the Southern District of the state of New York before said Shields, a United States commissioner for said district, said Kirk, however, being a resident of Syracuse, in the Northern District of the state of New York. This recognizance was approved by Hon. E. Henry Lacombe, United States circuit judge for the Second Circuit. This recognizance was filed in the clerk's office of the United States District Court, Eastern Division, Southern District of Georgia, on the 22d day of January, 1902. The said Gaynor was then discharged in the Southern District of the state of New York, and was not removed to nor taken to, nor did he appear in, the said United States District Court, Eastern Division, Southern District of Georgia.

At the February term of the said District Court, Eastern Division, Southern District of Georgia, the said court ordered the said John

F. Gaynor to appear before the court on the 6th day of March, 1902, to answer to the charge then and there pending against him on indictments Nos. 322 and 371, of which said order the counsel of record of the said John F. Gaynor had due notice and the said John F. Gaynor had due notice.

At a District Court held in said Eastern Division of the Southern District of Georgia, begun on Tuesday, February 11, 1902, that being the second Tuesday of February of that year, an order was entered reciting that at the November term, 1899, of the said District Court, a true bill of indictment was found charging said Gaynor with having, within the Eastern Division of the Southern District of Georgia, on the 1st day of January, 1897, conspired to defraud the United States, and with having defrauded the government pursuant to such conspiracy, and in said order said indictment is referred to as having been numbered 322 upon the criminal dockets of said court. The said order also recites the recognizance so entered into by Gaynor and Kirk. Said order further recites that at the said February term, 1902, a true bill of indictment charging said John F. Gaynor and others with unlawfully, knowingly, and feloniously conspiring, etc., to defraud the United States, and with defrauding the United States accordingly, was found, and refers to the said indictment now on file in the Eastern Division of the Southern District of Georgia, and numbered 371 upon the criminal dockets of said court. The said order then recites that at the said February term of the said District Court for the Eastern Division of the Southern District of Georgia, on the 28th day of February, 1902, an order was made in the matter of both said indictments, docket number 322 and docket number 371, stating:

"The defendants, Benjamin D. Greene, John F. Gaynor, William T. Gaynor and Edward H. Gaynor, charged as aforesaid, under bail for appearance before this Court at this Term of the Court in that behalf, are ordered by the Court personally to appear before this Court in the United States Court Room in the City of Savannah in the above stated matter, on Thursday, March 6th, 1902, at 10 o'clock A. M., then and there to stand to, abide and perform the orders of the Court in the premises."

This order was indorsed:

"District Court of U. S., Eastern Division, Southern District of Georgia. No. 371. United States vs. Benjamin D. Greene, et al. Indictment No. 371. Order to Appear. Filed February 28, 1902. S. F. B. Gillespie, Deputy Clerk."

March 6, 1902, an order was made, which in the heading refers to both docket numbers, and which recites the order of February 28th directing the defendants to appear on the 6th day of March, and also recites that March 6, 1902, in the said courtroom, the said Benjamin D. Greene and John F. Gaynor were duly called, but failed to appear or answer to their names when called, and also recites that their counsel then stated that they were unable to give any reason for the nonappearance of said defendants, and also recites that, the court having awaited their appearance until the hour for adjournment of court this day, and they being still in default, but their counsel asking until tomorrow before proceedings be taken to forfeit their recognizances:

"It is therefore ordered that said defendants, Benjamin D. Greene and John F. Gaynor, be given until 10 o'clock A. M. March 7th, 1902, to appear and abide the order of the Court, and that they do appear at that time at the said Court Room to abide the order of the Court in the premises."

This order was indorsed as a proceeding on indictment No. 371.

An order of said court was made on the 7th day of March, 1902, reciting the arrest of Gaynor and his commitment by Shields, United States commissioner, and the order for his removal, and the giving of said recognizance hereinbefore mentioned and its approval, and also reciting the condition of said recognizance, and then continues:

"Now on this 7th day of March, 1902, at the February term, 1902, of the said District Court of the United States for the Eastern Division of the Southern District of Georgia, the said John F. Gaynor, principal, being solemnly called to come into Court to answer said charge, and having been duly notified to appear before the Court on this day to stand to and abide the orders of the Court in the premises; and the said William B. Kirk, his bail, having been warned to present the body of his said principal whom he engaged to be present this day to answer said charge, and said parties respectively having wholly made default: It is, therefore, considered and ordered by the Court that the said John F. Gaynor and William B. Kirk forfeit their said recognizance, and that the United States of America recover against the said John F. Gaynor and William B. Kirk, jointly and severally, the sum of forty thousand dollars ($40,000.00) the amount of their said recognizance so forfeited as aforesaid, unless at the next term of this Court they show cause why this order should not be made final. It is further considered and ordered by the Court that a scire facias issue against the said John F. Gaynor and William B. Kirk, and that the same be directed 'To the Marshal of the Southern District of Georgia, and to the Marshals of the United States' that the same may be served upon the said John F. Gaynor and William B. Kirk in whatever District they or either of them may be found. In Open Court this the 7th day of March A. D. 1902. Emory Speer, U. S. Judge."

Afterwards, at the said term of the court for the Eastern Division of the Southern District of Georgia, and on the 17th day of March, 1902, an order was entered referring in the heading and title to the indictments Nos. 322 and 371, and which states in substance that Gaynor having been required to appear on the 6th day of March, of which due notice was given, and that they having failed to appear on the 6th day of March, 1902, were thereupon, at the request of their counsel, directed to appear March 7, 1902, and that on the 7th day of March, 1902, said defendants were called and failed to answer, and recites that James D Leary, the bail of the defendant Benjamin D. Greene, having been called upon to produce him and having failed so to do, and that William B. Kirk, the bail of the said Gaynor, having been called upon to produce him in accordance with his recognizance, and having failed so to produce him, the court entered orders forfeiting the said two recognizances. And said order further recites:

"And the said William T. Gaynor and Edward H. Gaynor having duly appeared before the Court and having pleaded to said indictments numbered 322 and 371, respectively, and this day being the time set for the jury trial on indictment No. 322 demanded by the pleas of the said Benjamin D. Greene, John F. Gaynor, William T. Gaynor and Edward H. Gaynor, the said Benjamin D. Greene and John F. Gaynor were this day again called to come into Court to stand to and abide by the orders of the Court in the premises, and again failing to answer to their names, are adjudged still in default and the said James D. Leary, the bail of the said John F. Gaynor, were again this

*day* called upon to produce their respective principals in accordance with their recognizances and failed to produce them. It is thereupon ordered, adjudged and decreed, that the order of this Court made on the seventh (7th) day of March, 1902, adjudging the recognizances of the said Benjamin D. Greene and John F. Gaynor forfeited, be and the same is confirmed; and it is further ordered, adjudged and decreed that the scire facias, ordered in the said order of March 7th, 1902, to be issued, shall be issued by the Clerk of this Court and made returnable to the May Term, 1902, of this Court."

This order, which was made March 17, 1902, further recited that, as the ends of public justice would not be subserved by proceeding with the trial of the defendants William F. Gaynor and Edward H. Gaynor, the cases against them on said indictments numbered 322 and 371 be continued until the next term of this court.

Thereafter, and on the 17th day of March, 1902, an original writ of scire facias was issued out of the said District Court of the United States for the Eastern Division of the Southern District of Georgia, which recited the proceedings before mentioned and the recognizance, and commanded as follows:

"You are hereby commanded to make known to said John F. Gaynor and William B. Kirk that they and each of them be and appear before the Judge of the District Court of the United States in and for said Eastern Division of the Southern District of Georgia at a Court to be holden in the City of Savannah on the second Tuesday of May, 1902, that being the May Term, 1902, of said Court, then and there if they know or have anything to say for themselves why the said sums of money should not be levied for the said United States of America, to wit, the sum of $40,000 of the goods and chattels, lands and tenements of the said John F. Gaynor, and the sum of $40,000 of the goods and chattels, lands and tenements of the said William B. Kirk, to be levied according to the said recognizance if it to them shall seem expedient, and have you then and there this writ. Witness" etc.

"[Signed] H. H. King, Clerk,"

—And duly sealed with the seal of the court.

Upon this writ of scire facias appears the return of the marshal of said Eastern Division of the Southern District of Georgia, dated April 2, 1902, wherein he says:

"I hereby certify that after diligent search I am unable to find the within named defendants John F. Gaynor and William B. Kirk within my District for service of the within writ upon them."

The defendant was not then within the state of Georgia or said district, and the surety, the complainant in this action, William B. Kirk, was not then within said district or a resident thereof, nor within said state of Georgia nor a resident thereof, nor had he ever been within said district, nor did he have any property within said district.

On the 5th day of April, 1902, the said writ of scire facias was personally served upon William B. Kirk at Syracuse, in Onondaga county, state of New York, by C. D. MacDougall, United States marshal for the Northern District of New York, in which district said county is situated. The writ was served on Gaynor by leaving same with one Sarah Maloney, at Gaynor's residence in Fayetteville, in said Onondaga county, on the 7th day of April, 1902, Gaynor being absent from said district. The original writ of scire facias was dated and sealed March 17, 1902.

Afterwards, and on the 17th day of July, 1902, an alias writ of scire facias was issued out of said District Court of the United States for the Eastern Division of the Southern District of Georgia, which recited the proceedings aforesaid, and commanded that said matters and things be made known to the said Gaynor and Kirk, and that they and each of them be and appear before the judge of the District Court of the United States in and for said Eastern Division of the Southern District of Georgia at the court to be holden in the city of Savannah on the second Tuesday of August, 1902 (that being the August term, 1902), of said court, then and there if they know or have anything to say for themselves why the said sums of money should not be levied for the United States of America, to wit, the sum of $40,000 of the goods, etc., of said Gaynor, and the sum of $40,000 of the goods, etc., of said Kirk, to be levied according to the said recognizance, if it to them shall seem expedient, and "have you then and there this writ," etc. This was duly witnessed, signed, and sealed. The return of the marshal for said Eastern Division of the Southern District of Georgia states that after due and diligent search he was unable to find the said defendants Gaynor and Kirk, or either of them, within his district, for service of the said writ upon them. It does not appear that this alias writ was ever served upon Gaynor or Kirk.

Thereafter, and at the November term, 1902, of the said District Court of the United States for the Eastern Division of the Southern District of Georgia, and on the 12th day of January, 1903, the following was duly entered, with proper headings, viz.: In substance, that no cause having been shown by the defendants Gaynor or Kirk, surety, why the order of the court made March 7, 1902, and confirmed March 17, 1902, at the February term of the court, forfeiting the recognizance given by the said Gaynor as principal, and the said Kirk as surety, should not be made final, and no appearance, demurrers, pleas, or answers having been filed to the original writ of scire facias or to the alias writ of scire facias issued out of this court on said recognizance—

"It is considered, adjudged and ordered by the Court that the said orders and judgment of the Court forfeiting said recognizance are hereby made final, and that execution may issue thereon in favor of the United States of America, to be levied for the said United States of America, to wit; the sum of forty thousand dollars ($40,000) of the goods and chattels, lands and tenements of the said John F. Gaynor, and the sum of forty thousand dollars ($40,000.00) of the goods and chattels, lands and tenements of the said William B. Kirk, to be levied according to the said recognizance and judgment of forfeiture entered at the February Term 1902 of this Court as aforesaid; and that execution shall be directed to the Marshal of the United States for the Southern District of Georgia, the Marshal of the United States for the Northern District of New York, and to the Marshals of the United States. In Open Court, this 12th day of January 1903. Emory Speer, U. S. Judge. Alexander Akerman, Assistant U. S. Attorney."

Thereupon execution issued to the marshal of the Northern District of New York, who levied upon the real property of the surety, William B. Kirk, situate in the city of Syracuse, Onondaga county, state of New York.

This action in the Circuit Court of the Northern District of New York was then brought against the above-named defendants to perpetually restrain and enjoin proceedings on said execution, and to restrain and enjoin the collection of said alleged judgment.

The bill of complaint alleges the giving of said recognizance, and that same was executed in the Southern District of New York and there delivered, having been executed before the delivery to United States Commissioner Shields of said Southern District of the state of New York. The bill of complaint also alleges that both Gaynor and Kirk then were, and at all times since have been, residents of the state of New York, and that they nor neither of them have been within or submitted themselves to the jurisdiction of the Eastern Division of the Southern District of the state of Georgia.

The bill of complaint further alleges that in fact the said John F. Gaynor did on the 2d day of February, 1902, appear before the term of the District Court of the United States for the Eastern Division of the Southern District of Georgia, and that then and there the court took custody of the said John F. Gaynor, and ordered and directed that he should not depart from the limits of Chatham county, Ga., that being the county in which said court was being held; and the complaint alleges that the surety was thereby relieved from further obligation under the recognizance mentioned. The bill of complaint also alleges that the said Gaynor appeared regularly in said court of the Southern District of Georgia until an order was made by the court fixing the time of his trial on the indictment then pend·ing for March 17, 1902, at which time he was directed to appear, and; that before the time when he was directed to appear the order was made forfeiting and estreating the recognizance, and the complainant alleges that he was thereby released and discharged from the obligations of said recognizance.

The bill of complaint also alleges that the complainant Kirk neve, resided or was in the state of Georgia, either at the time said recog·· nizance was executed or at any subsequent time, and that he did not appear or submit himself to the jurisdiction of said District Court of the Eastern Division of the Southern District of the state of Georgia, and that he was not served with said writ of scire facias, excepting at Syracuse, in the Northern District of New York, as hereinbefore stated.

The complainant alleges and contends that the record is such that it does not appear that the recognizance in question was forfeited or estreated; that it is so confounded and confused with another indictment that the record shows on its face that the proceedings were and are void.

The main contention is, however, that as the defendant Gaynor was a resident of and within the state of New York, and his surety Kirk was a resident of and within the state of New York, and the recognizance was executed within the state of New York, and in the Southern District thereof, before a United States commissioner of said district, even if the defendant failed to appear for trial or to answer what might be adjudged against him in the Eastern Division of the Southern District of Georgia, that the District Court of

said Eastern Division Southern District of Georgia could not and did not gain jurisdiction of the surety Kirk by personal service of said writ of scire facias outside the state of Georgia, and outside the district in which issued, and in the Northern District of the state of New York. The complainant contends that; while the District Court of the Eastern Division of the Southern District of Georgia had power to estreat the bond, all proceedings to enforce and collect the same thereafter must be instituted and prosecuted in the district in which the defendant Kirk resided and resides, to wit, in the Northern District of the state of New York, or in the Southern District of the state of New York, if said proceedings may be instituted in the district where the recognizance was executed. That personal service of said writ on Kirk in the Northern District of New York did not give jurisdiction to the District Court of the Eastern Division of the Southern District of Georgia. The defendants contend that this action cannot be maintained against the United States, but this contention is of little importance, as the United States has appeared and answered, as has the defendant Clinton D. MacDougall, as marshal of the Northern District of New York. The power and jurisdiction of this court to restrain the marshal, an officer of the government, from enforcing and collecting said execution, if the same and the proceedings on which founded are void, cannot well be questioned. See cases hereafter cited.

The main contention of the government is that when Kirk signed the recognizance, even though the act was done in the Southern District of New York, he entered into an obligation to produce his principal, Gaynor, in the District Court of the Eastern Division of the Southern District of Georgia, which recognizance was to be filed there, and that he thereby submitted himself to the jurisdiction of that court for all purposes, and that personal service of the writ of scire facias upon him at any place within the United States, or by two returns "nihil," was good and sufficient service and notice. This court is of the opinion, and holds, that it sufficiently appears from the record that the recognizance in question was duly forfeited and estreated, and that the District Court for the Eastern Division of the Southern District of the state of Georgia had power and jurisdiction to estreat such recognizance and declare it forfeited. If, however, as is alleged in the bill of complaint, Gaynor did appear as ordered and at the times ordered, and the trial was fixed for a day certain when the defendant was to appear, and the order estreating and forfeiting the recognizance was made prior to that time, it presents a serious question whether that court had power to make a valid order confirming the order estreating and forfeiting the recognizance made at a time when there was no default and when the court had no right to make such an order. If Gaynor was ordered and directed to appear on the 17th, and the surety had notice, then that was the time for him to produce the defendant, and, if he failed to produce the defendant in the indictment on that day, an order could be made forfeiting and estreating the recognizance because of such default, but this nonappearance or nonproduction of the defendant would not authorize the making of an order confirming an order estreating the

bond for the nonappearance or the nonproduction of the defendant on the 7th day of March, at which time the defendant was under no obligation to appear, and on which day the surety was under no obligation to produce him. Such an unwarranted proceeding could not be validated by any subsequent order of confirmation. It must be conceded that there is an inconsistency in the record itself. This contention presents a question of fact which can only be determined satisfactorily on the trial.

As to the other question raised in this case, there is but little doubt as to what the law in fact is. This court finds no case holding that a recognizance given in a certain district of one state, where the defendant and his surety reside and where the defendant is apprehended, for the appearance of the defendant in another district in another state where the indictment is found, may be collected or enforced against the surety by execution issued upon scire facias issued out of the District Court where the defendant was to appear, but which was not personally served on the surety in such district, but was served personally in the district where the surety resides.

It has been contended by the government that the scire facias proceeding in this case is not an original suit or proceeding, but a mere continuation of the criminal proceeding. The original proceeding was a criminal prosecution by the United States of America against John F. Gaynor and other indicted persons, whose names it is unnecessary to mention, except that Benjamin F. Greene was one. The proceeding was to punish Gaynor, the principal, for an alleged commission of a crime. When Gaynor failed to appear, and the court forfeited or estreated the recognizance, this was not a trial or conviction or punishment for a crime, but a step preliminary to independent proceedings authorized by law to collect a sum of money or a debt due to the United States under the terms of the recognizance entered into by Gaynor and Kirk, and this was a civil proceeding in its nature, although one arising under the criminal laws of the United States. Kirk, the surety, had no property in the state of Georgia. He was not a resident of that state, and could not in any case be sued there, in a civil action in the courts of the United States, unless found there and personal service had. If the government would prosecute him by or in an original action or proceeding, it must institute such proceeding in the district where he resided, or at least in the district where found and served. This could be done in either of two ways: On application to the courts in the Northern District of New York, possibly a writ of scire facias might issue; but in any event a civil action in the Circuit or District Court might be instituted to collect the penalty of the recognizance. This is the contention of the complainant Kirk. Is the contention well founded?

In United States v. Payne, 147 U. S. 687, 690, 13 Sup. Ct. 442, 37 L. Ed. 332, the Supreme Court held, without dissent:

"While a scire facias to revive a judgment is merely a continuation of the original suit (Frierson v. Harris, 94 Am. Dec. 223, notes), a scire facias upon a recognizance, or to annul a patent or for other similar purposes, is as much an original cause as an action of debt upon a recognizance, or a bill in equity to annul a patent. Winder v. Caldwell, 14 How. 434, 443 [14 L. Ed. 487]; United States v. Stone, 106 U. S. 525, 535 [27 L. Ed. 163]."

It is immaterial that it is a case arising under the criminal laws of the United States (Hunt v. United States, 166 U. S. 424, 17 Sup. Ct. 609, 41 L. Ed. 1063); it is an original cause to enforce the liability of the surety upon his contract that at a certain time and place he would produce his principal (the alleged criminal) or pay the amount of the recognizance. This is substantially held by the Supreme Court of the United States in Hunt v. The United States, 166 U. S. 424–426, 17 Sup. Ct. 609, 41 L. Ed. 1063, where the court, per Gray, J., says:

"It is a suit to enforce the penalty of a recognizance taken to secure the appearance of the principal to answer the charge and to abide any sentence against him."

(The learned justice was speaking of proceedings by scire facias to enforce the penalty of a recognizance in a criminal case.)

In 2 Chitty's Archbold's Practice (Prentice) (Chap. 7, p. 1140) 1140, it is said:

"It [the writ of scire facias] is, however, considered in law as an action [citing authority], and when brought to repeal letters patent may in fact be an original writ returnable in chancery, or a judicial writ returnable in the superior court. The scire facias against bail on their recognizance, against pledges, in replevin to repeal letters patent, or the like, is in fact altogether an original proceeding."

In volume 19, Encyclopedia of Pleading and Practice, page 293, it is said:

"And there yet remains a second class in which scire facias proceedings are in the nature of an original action, and in some cases have been held to be in fact the commencement of an original action."

These proceedings of this character are then described, and at pages 305, 306, it is said:

"(c) On Forfeited Recognizances in Criminal Cases. (1) In General. Proceedings by scire facias for the purpose of enforcing forfeited recognizances in criminal cases are resorted to in the federal courts and in the courts of many of the states.

"(2) Nature of Proceeding. The purpose of a scire facias upon a forfeited recognizance is to give notice to the parties thereto to show cause why judgment should not be rendered against them for the amount of the recognizance.

"Original Action. A scire facias on a recognizance is, it seems, generally held to be in the nature of an original action, and some cases hold that a scire facias upon a recognizance of bail in a criminal case is to be regarded as an original writ and as the institution of a new suit."

See, also, 1 Saund. 71a, note; 2 Tidd, 1125–1150.

In Niles v. Drake, 17 Pick. 516, the court said, "A scire facias against bail is a new action," citing 6 Danes, Abr. 463; Co. Litt. 290b; Litt. § 505. Foster's Scire Facias says it is a new action when founded upon a recognizance. Foster's Scire Facias, § 13.

The better authorities also hold a proceeding by scire facias upon a forfeited recognizance in a criminal case to be a civil action. See cases cited, notes 4 and 5, p. 307, Enc. Pleading & Practice, vol. 19.

Indeed, it is difficult to understand what there is of a criminal nature in a proceeding to collect a sum of money of a surety in a recognizance given for the appearance of the defendant at the time and place fixed for his trial, default having been made. Does the surety become a criminal if the principal absconds and cannot be pro-

duced?' Has the surety committed any offense punishable by any criminal statute? The surety cannot be arrested or imprisoned. He is simply bound in contract to pay so much money. The proceeding to collect the amount of the recognizance is not to punish an offense or to impose a penalty for the violation of any law. If the amount be collected and the defendant in the indictment be afterwards apprehended, he may be tried, convicted, and punished. It being an "original cause" and "a suit to enforce the penalty of a recognizance" in a criminal case, how can jurisdiction of the surety in the undertaking be obtained for the purpose of obtaining a personal money judgment and execution? Certainly there must be personal service within the district where the writ issues, or, what is more probable, the proceeding, whether by action or scire facias, must be commenced in the district where the surety resides. This court doubts the right to issue the writ in such a case from any court other than that where the recognizance is a matter of record. 19 Enc. Pleading & Practice, p. 296, and cases cited; 2 Chitty's Archbold's Pr. 1141. But this is not decided. Even if this is true, the fact that scire facias may not issue in the Northern District of New York confers no power to institute proceedings by scire facias in the District Court of the Eastern Division of the Southern District of Georgia against the complainant herein, who resides in the state of New York, and bind the surety by personal service of such writ in the state of his residence. Such proceedings are but one of two remedies, and an action on the recognizance may be brought in the district where Mr. Kirk resides. There is a remedy in the courts of the United States. That remedy is by an action.

In volume 19, Enc. of Pleading and Practice, pages 275, 276, it is said:

"A writ of scire facias must be properly served in the manner prescribed by law in order that a judgment may be rendered thereon, unless the want of service or the defects therein be waived. It may be laid down as a general rule that a writ of scire facias is to be served in the same manner as other process. * * * There must, as a general rule, be personal service upon the defendant of a scire facias, or summons in the nature of a scire facias, at least where it is a remedy provided by statute unknown at common law, and of a merely personal character."

Congress may by law provide that process in any case be served personally anywhere in the United States, but it has not done so, and in the absence of a statute service must be had in the district where the defendant resides, or, in some cases, where found. Toland v. Sprague, 12 Pet. 300, 327, 328, 9 L. Ed. 1093; Butterworth v. Hill, 114 U. S. 128, 5 Sup. Ct. 796, 29 L. Ed. 119; Bourke v. Amison (C. C.) 32 Fed. 710.

By statute, final process, as execution, in favor of the United States, may be served in any state of the Union, but this has not been extended to original or other process. See Toland v. Sprague, supra.

In Herndon v. Ridgway, 17 How. 424, 425, 15 L. Ed. 100, the court said (citing Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093):

"The jurisdiction of the District Court over parties is acquired only by a service of process, or their voluntary appearance. It has no authority to issue process to another state."

In United States v. American Lumber Co., 85 Fed. 827, 29 C. C. A. 431, 56 U. S. App. 655, it was held:

"The process of a Circuit Court of the United States cannot run beyond the court's territorial jurisdiction, and sending writs of subpœna ad respondendum without a district in which only they can be served, and to persons who are without power to serve them, are vain and futile acts."

That a writ of scire facias is a process, and the process by which the proceeding or suit is commenced against the surety (in cases of recognizance in criminal cases), where it is sought to enforce the liability of the surety by such a proceeding, cannot well be questioned. Does the surety in a recognizance in a criminal case, which recognizance is executed in New York state, where he resides and continues to reside, but is to be filed in the District Court of another state, as Georgia, where the indictment was found and is pending for trial, by entering into and executing such recognizance, submit himself to the jurisdiction of such District Court for the purpose of the collection of same, in case of default and forfeiture of the recognizance? Does he consent thereby that he may be proceeded against in Georgia; to go there and make his defenses, if any he has, and, if defeated, have execution against his property in New York? No such condition or agreement is found in the recognizance or is imposed by statute.

Conceding that "when the condition of an undertaking of bail is broken the penalty accrues, and the parties become absolute debtors to the obligee for the amount thereof, and they must be held liable to pay the same, unless they can show some matter legally sufficient to excuse the default" (U. S. v. Van Fossen, 1 Dill. 406 [Fed. Cas. No. 16,607]; U. S. v. McGlashen [C. C.] 66 Fed. 537; People v. Quigg, 59 N. Y. 83); still, thus far we have a debt or a conditional judgment, perhaps, but neither a final judgment nor a judgment absolute. In the scire facias proceeding properly instituted by due service, the defendant may appear and plead and have a trial of all questions or matters of defense, and the proceeding is but a suit to enforce the penalty of the recognizance (Hunt v. U. S., 166 U. S. 424, 17 Sup. Ct. 609, 41 L. Ed. 1063), and differs from any other suit to enforce it only in the process by which commenced. Whether by subpœna or by writ of scire facias it is still a suit commenced by process, and if the surety has not voluntarily submitted himself to the jurisdiction of the court out of which the writ issues he must be served in the district where it issues. If he has already voluntarily submitted himself to the jurisdiction, why is service of the writ necessary at all? Clearly not to give jurisdiction, but to notify the surety of the pendency of the proceeding. If the scire facias proceeding "is a suit to enforce the penalty of a recognizance," it cannot be deemed commenced until the writ issues, and as it is the process by which the suit is instituted it must be served within either the district where the defendant resides or where he is found, or by substituted service in cases where substituted service is provided for. This is not such a case.

Concede that "a court with power to take a bail bond has jurisdiction of a scire facias proceeding to enforce the same" (State v.

Caldwell, 124 Mo. 513, 28 S. W. 4), as this bail bond was taken by a commissioner in the Southern District of New York pursuant to law and was approved there, it was in effect taken by the court of that district, and that court has jurisdiction of the scire facias proceeding to enforce the same. It was not taken in the District Court of the Eastern Division of the Southern District of Georgia. That court had no jurisdiction to take this particular recognizance, but the court in New York did have by virtue of a special statute.

In United States v. Insley, 54 Fed. 223, 4 C. C. A. 296, it was held that a forfeited recognizance such as this may be enforced by scire facias proceedings, but it is expressly stated that the writ or process must be "duly served."

By section 716, Rev. St. [U. S. Comp. St. 1901, p. 580], it is expressly provided that the Supreme, Circuit, and District Courts of the United States may issue writs of scire facias, but there is no provision that when issued in one district they may be served in another.

The case of People v. Quigg, 59 N. Y. 83, has no application here. That case arose under a statute of the state of New York providing for a summary final judgment upon a forfeited recognizance, and, the statute having been strictly followed and judgment entered, the court held that such provision entered into and formed a part of the undertaking of the surety, and that by executing the recognizance he consented, in case of default, that judgment might be entered and perfected in the manner prescribed by that statute, and that he waived any other process of law. But here we have no statute of the United States providing for a final judgment upon a forfeited recognizance in any other manner than that following a suit or a scire facias proceeding, in both of which cases the process by which the suit or proceeding is instituted must be "duly served." And due service means personal service within the district in which the process legally issues. Undoubtedly it would be competent for Congress to provide for summary final judgments without notice upon forfeited recognizances in criminal cases, irrespective of the residence of the surety in the recognizance, either at the time it was executed, or at the time of its forfeiture, or at the time of the institution of proceedings to enforce the liability, and for execution without notice, and in such case the surety would assent to that mode of enforcing his liability, but no such statute has been enacted, nor is that the common law.

Elasser v. Haines, 52 N. J. Law, 10, 18 Atl. 1095, does not substantially aid the defendants in this case. There the question was whether the New Jersey court would recognize and enforce against the defendant Haines a judgment obtained against him in the state of Pennsylvania, and which he had not moved to vacate, and from which he had not appealed. The judgment in question was obtained in the district court of the city and county of Philadelphia, in the state of Pennsylvania, on a forfeited recognizance in a civil action in the following manner: October 20, 1868, the defendant personally appeared in the said district court, and entered into the recognizance in question as surety for one Owens, and the condition having been

broken, the recognizance was duly forfeited. Thereupon a writ of scire facias was issued, and, defendant not being found, a return nihil habet was duly made, and thereafter an alias writ of scire facias was issued in said matter, and this also was returned nihil habet. Thereupon judgment was entered against the defendant according to the laws and the practice of the courts of the state of Pennsylvania. In the action in New Jersey the defendant pleaded that he was not a resident of the district in which said judgment was rendered when such writs issued and such judgment was entered, nor did he appear. He did not deny that he was a resident of the said district when he executed the recognizance or of the state of Pennsylvania at the times mentioned, nor that he went into open court in the district and entered into the recognizance. Two nihils being equivalent to service on all residents of the state of Pennsylvania, and that being the recognized law of the state, and defendant being a resident of the state, the service was good. Defendant consented to that mode of entering judgment when he entered into the recognizance. Says the court, page 18, 52 N. J. Law, and page 1098, 18 Atl.:

"The answer is that by the form of the procedure, of which the writs of scire facias formed a part, the conusor voluntarily made himself a party to the proceeding. He went into court and confessed a debt, subject to a condition, with the knowledge that if he absented himself from the jurisdiction a judgment might be taken against him on the return of two unserved writs of scire facias. Such was the legal effect of the act done by him, and in intendment of law he was held to have assented to such effect. If, when he confessed the debt, he had expressly consented, in pursuance of a local statute, to the entry of a final judgment of this nature on the return of two unserved writs of scire facias, it is presumed it would not be contended that a judgment entered in accordance with such stipulation would not have been of unquestionable validity; and yet as he is chargeable with the knowledge, when he entered into this recognizance, that such result would obtain, according to the laws then in force, the tacit assent to such procedure wants but little of the force that would have resided in such supposed positive agreement."

There was a vigorous dissent in that case. But the holding in that case is contrary to the decisions in the state of New York. Robinson v. Executors of Ward, 8 Johns. 86, 5 Am. Dec. 327; Kilburn v. Woodworth, 5 Johns. 37, 4 Am. Dec. 321; Fenton v. Garlick, 8 Johns. 194. In the first case cited the action was on a judgment obtained in the state of Vermont, where service, not personal, was obtained according to the laws of that state, a mixture of substituted service and scire facias proceedings. Two "nihils" were returned to the scire facias, but defendant was not a resident of the state. The court said:

"At all events, there was no personal service or actual notice. And in the case of Kilburn v. Woodworth it is said that to bind a defendant by a judgment, when he was never personally summoned or had not notice of the proceedings, would be contrary to the first principles of justice. And whether the proceedings were valid, and according to the course of the court in the place where such judgment was obtained, or not, would make no difference, according to the case of Buchanan v. Rucker, 9 East, 192. The principle on which these decisions turn applies to the present case, notwithstanding Ward was sued as bail in Vermont. The proceedings against him there were in the nature of a new suit, and the bail might have had a good and substantial defense to make. There is, therefore, the same reason for his having notice

as in any other case. We are accordingly of opinion that the defendant is entitled to judgment."

The case of Owens v. Henry, 161 U. S. 642, 16 Sup. Ct. 693, 40 L. Ed. 837, would seem to settle the proposition that, while two returns "nihil" on successive writs of scire facias are equivalent to service when the defendant in the scire facias resides or is found within the jurisdiction of the court where the writ issues (Brown v. Wygant & Leeds, 163 U. S. 618, 16 Sup. Ct. 1159, 41 L. Ed. 284), and the proceeding is to revive a judgment, two successive returns "nihil" on two writs of scire facias are not equivalent to service where the defendant has left the jurisdiction of the court where the judgment was entered and where the writ issues, and is and resides in another state.

In Owens v. Henry, supra, O. recovered judgment in Pennsylvania against H. and F., both residents of that state. In 1865, H. removed to Louisiana and became a citizen of that state, and so continued until his death. In 1866 the judgment was revived by scire facias, the process being served on F. only. The judgment was again revived in like manner in 1871. In 1880, O. proceeded on the judgment against H. in the courts of Louisiana. He elected to stand on the scire facias proceedings of 1871. The Supreme Court of the United States held that the judgment had no binding force as against H. in Louisiana, for the reason that H. was not served with the process of scire facias, although there were two returns nihil, and had not voluntarily appeared. In the opinion of this court this case settles the principle that two returns nihil are not equivalent to service, except where the writ issues lawfully out of the court in the jurisdiction where the defendant resides. Service in this manner, to be good service, assumes that the defendant resides within the jurisdiction of the court issuing the writ, but cannot be found. In such case two returns nihil are equivalent to personal service, but two returns nihil are not service when the defendant does not reside within the jurisdiction of the court issuing the writ. If this be true in a case for the recovery of a sum of money, where judgment was lawfully issued in the first instance on personal service, and the proceeding is to revive a judgment, how much more ought it to be true in a case where the scire facias proceeding is an original suit, or in the nature of an original suit, and the defendant does not reside within the jurisdiction of the court issuing it, and neither resided nor was within the jurisdiction of that court at the time the recognizance was executed or default thereon taken or when the writ issued.

In Owens v. Henry, 161 U. S. 642, 16 Sup. Ct. 693, 40 L. Ed. 837, the court, in concluding its opinion, said, citing cases:

"Viewed as a new judgment rendered as in an action of debt, it had no binding force in Louisiana, as Henry had not been served with process or voluntarily appeared. And considered as in continuation of the prior action and a revival of the original judgment for purposes of execution, on two returns of nihil, it operated merely to keep in force the local lien, and could not be availed of as removing the statutory bar of the lex fori, for the same reason. Thompson v. Whitman, 18 Wall. 457 [21 L. Ed. 897]; Pennoyer v. Neff, 95 U. S. 714 [24 L. Ed. 565]; Grover & Baker Sewing Machine Co. v. Radcliffe, 137 U. S. 287 [11 Sup. Ct. 92, 34 L. Ed. 670]; Steel v. Smith, 7 Watts &

S. 447; Evans v. Reed, 2 Mich. N. P. 212; Hepler v. Davis, 32 Neb. 556 [49 N. W. 458, 13 L. R. A. 565, 29 Am. St. Rep. 457]."

It is contended by the defendants that the Circuit Court of the Northern District of New York cannot interfere by injunction with the judgment of the court of the Eastern Division of the Southern District of Georgia, as that is a court of co-ordinate or concurrent jurisdiction, having equal power to grant the relief sought by injunction.

The complainant in this action is a resident and an inhabitant of the state of New York, where he owns real estate. The alleged judgment was obtained and entered of record in the District Court of the Eastern Division of the Southern District of the state of Georgia. Execution thereon, which, if the judgment is valid, may run to any state in the Union, was issued and delivered to the marshal of the Northern District of the state of New York, and he, under the authority thereof, has levied upon and proposes to proceed and sell, for the benefit of the United States, this real estate of the complainant. The complainant alleges that the judgment upon which such execution was issued is absolutely void; that the court had no power to enter it. It is hardly necessary to say that if the judgment is void the execution thereon is also void. If the execution is void, then Clinton D. MacDougall, the marshal of the Northern District of New York, has no right or power whatever to levy upon and sell the real estate of the complainant in this action situated in the state of New York, where the complainant resides. The complainant cannot be compelled in any such manner to go to the state of Georgia and into the District Court of the Eastern Division of the Southern District thereof, and move there in that court to set aside the judgment. He had no legal notice of the proceedings which resulted in such judgment. In that action or proceeding he did not submit himself to the jurisdiction of that court, and it is not a case where the alleged defendant therein, the complainant in this action, is under any obligation whatever to proceed in that court. He has the right to invoke the protection of the Circuit Court of the United States in the district where he resides, and where his property wrongfully and illegally levied upon, and proposed to be sold, is situated. He has the right, in the district of his residence and where the subject-matter of the litigation is situated, to defend himself and his property against an unwarranted and an illegal seizure and sale of his real estate on process issued by the District Court in another state. This is an action by the complainant to protect and defend his property situate in this district—the Northern District of New York—against the illegal and unwarranted acts of the marshal. If the execution in the hands of the marshal is void, then that officer has no right to take any action under it. If the complainant would protect himself and protect his property, he must have these illegal acts restrained, and it is hardly reasonable to say or contend that he may maintain such an action against the marshal in the District Court of the Eastern Division of the Southern District of Georgia, where neither of the parties reside.

If the execution in the hands of the marshal of the Northern District of New York, and by virtue of which he has levied upon and pro-

poses to sell the real estate of the complainant, is void, then the marshal is a trespasser. He assumes to act as marshal, and in execution of a process issued out of one of the courts of the United States. The right of action is given by the laws of the United States which make the marshal responsible for trespasses committed by him in his official character. Bock v. Perkins, 139 U. S. 628, 11 Sup. Ct. 677, 35 L. Ed. 314; Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257; Texas & Pac. Railway v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829. A suit against a marshal of the United States for acts done in his official capacity is a suit arising under the laws of the United States. Sonnentheil v. Christian M. B. Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492. The complainant in this action is under no obligation to lie still until his property has been sold and his title clouded. He may restrain, in a court of competent jurisdiction, all these illegal acts, and prevent either a sale of his property or any act that will cloud the title. A suit in equity, under some circumstances, may be maintained to set aside a void judgment, and of course to set aside an execution thereon, or to restrain the collection of a void judgment. First National Bank v. Cunningham (C. C.) 48 Fed. 510; Pac. R. of Nev. v. Miss. P. R. Co. et al., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498; U. S. v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; N. C. R. Mill Co. v. St. L. O. & S. Co., 152 U. S. 596, 14 Sup. Ct. 710, 38 L. Ed. 565.

It is urged that this complainant is not entitled to equitable relief for the reasons that Gaynor, the principal, did not appear for trial, as required, but fled to Canada, where he is now sojourning, defying extradition, and that by so doing he escapes justice. But this action in equity has nothing to do with the apprehension, extradition, and trial of Gaynor. The United States is entitled, in an appropriate action in the proper jurisdiction, to collect the penalty of the recognizance entered into by Gaynor with Kirk as surety for his appearance, etc., in the Eastern Division of the Southern District of Georgia. But such collection must be made in due form of law through the instrumentality of a court having jurisdiction, and the surety must, on due notice, have his day in court in the proper jurisdiction, to present his defense, if he has one. How far the confused record made as to the time when Gaynor was in fact required to appear for trial may be explained, the court cannot now decide. Ordinarily the record in such a case cannot be contradicted, but here we have a confusion of statement that possibly may be subject to explanation by oral evidence.

This court does not decide that the alleged judgment is void, or that the execution now in the hands of the marshal of the Northern District of New York is void and may not be enforced, but from the foregoing considerations is forced to the conclusion that there is such serious doubt that the injunction pendente lite asked should be granted restraining Clinton D. MacDougall, as marshal of the Northern District of New York, from taking further proceedings to enforce or collect the execution until the trial and decision of this action on the merits. On the trial all the facts will appear fully. An order

to that effect will be drawn and entered when settled. Same will be settled before me on five days' notice, and each party will submit to the other a proposed order.